**UNITED CENTRAL BANK OF DES MOINES, N.A. n/k/a First Interstate Bank of Des Moines, N.A., Appellee,**

v.

**Nancy A. KRUSE and Kevin C. Kruse, Appellants.**

No. 87–1117.

Supreme Court of Iowa.

April 19, 1989.

Rehearing Denied May 11, 1989.

John C. Werden, Jr. of Van Dyke & Werden, P.C., Carroll, and Eloise Lorch Rippie, Ames, for appellants.

Ross H. Sidney, Robert C. Thomson and Patrick J. McNulty of Grefe & Sidney, Des Moines, for appellee.

Considered by McGIVERIN, C.J., and LARSON, SCHULTZ, CARTER and ANDREASEN, JJ.

CARTER, Justice.

Defendants, Nancy A. Kruse and Kevin C. Kruse, appeal from the district court's decree foreclosing the mortgage of the plaintiff, United Central Bank of Des Moines (the bank), against their property and rejecting various affirmative defenses and counterclaims which plaintiffs had filed against the bank.

Defendants contend on appeal that the district court erred in: (1) excluding the testimony of an expert witness, (2) instructing the jury, within the context of defendants' false representation claims, that knowledge possessed by an attorney is chargeable to the attorney's client, (3) determining that the Iowa Consumer Credit Code and the federal Truth in Lending Act did not apply to the loan transaction in this case, and (4) dismissing defendants' counterclaims based on the Bank Holding Company Act, 12 U.S.C. §§ 1972, 1975 and the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961, on jurisdictional grounds.

On January 25, 1989, this court filed an opinion deciding the issues on appeal. As a result of defendants' petition for rehearing, which was granted by this court on March 16, 1989, that opinion, which was never published, has been withdrawn. Upon resubmission of the appeal, we now consider the issues anew.

On March 20, 1973, D.L. and Nancy Black (now defendant Nancy Kruse) purchased certain property from Patrick Graham. The property was purchased for use as both a residence and for conducting a dog boarding and grooming business. The contract price for the property was $100,000 payable in monthly installments of $661. Interest on the unpaid balance was fixed at 7½% per annum. The Blacks provided a down payment of $18,000. At the time Graham sold this property to the Blacks, he held title as contract purchaser from Melvin and Lula Hannusch. The Hannusches are not parties to the present action.

The Blacks and their children operated the dog boarding and grooming business from the time of its acquisition until the time D.L. and Nancy Black dissolved their marriage in 1979. As part of the Black dissolution proceedings, D.L. quitclaimed any interest in the property to Nancy. Thereafter, Nancy Black Kruse, one of the defendants herein, operated the business together with her present husband, Kevin Kruse.

In 1979, Graham borrowed $35,000 from the plaintiff bank and ultimately assigned his interest in both the Hannusch contract and the Graham/Black/Kruse contract to the bank as collateral security. Graham

later defaulted on the note, and the bank obtained a judgment against him in the amount of $29,166.67 on January 12, 1982. Sometime in 1982, the Kruses were contacted by an attorney for the bank. He advised the Kruses that Graham had assigned his interest in the contract to the bank and requested the Kruses to make their monthly payments directly to the assignee.

At about this same time, the Graham contract with the Hannusches came into default. The Hannusches served notice of forfeiture on Graham, the bank, and the Kruses. On March 8, 1982, the Kruses retained legal counsel. Through his efforts, the Kruses arranged to cure the default on the Hannusch contract by payments directly to the Hannusches. The Kruses took credit on their contract with Graham for these payments to the Hannusches. The balance owing on the Hannusch/Graham contract after the default was cured was $37,522.45. The balance owing on the Graham/Black/Kruse contract at this time was $60,054.79.

Further negotiations took place between the bank, the Hannusches, and the Kruses. Eventually, the Kruses entered into an agreement with the bank wherein the bank agreed to satisfy the unpaid balance of the Hannusch and Graham contracts and obtain a deed vesting title to the property in the Kruses. As part of this transaction, the Kruses gave the bank a mortgage on the property in the sum of $65,246.79. The balance of the Graham/Black/Kruse contract was at this time approximately $58,-000. The difference between that amount and the amount of the mortgage was applied by the bank to its judgment against Graham. The record reflects that the Kruses were represented by counsel during negotiations on the foregoing transaction with the bank. That attorney testified at the trial that he had reviewed the documents drafted by bank counsel as to legal form but left the ultimate business decision of whether to enter into the agreement entirely up to the Kruses.

The $65,246.79 mortgage indebtedness carried interest at the rate of twelve per cent per annum. The Kruses were required to make no payment of either principal or interest for the first twelve months (although interest accrued during that time). At the end of twelve months, the Kruses, upon payment of one year's accrued interest, could obtain an extension of the principal for an additional six months at which time the entire unpaid balance would become due and payable. The Kruses failed to make any payments of either interest or principal during the eighteen-month period, and the bank, in July 1984, commenced the present action for foreclosure.

The Kruses raise several affirmative defenses and counterclaims in their answer. Their statutory claims have been previously identified in the statement of issues presented. In addition, the Kruses presented, as affirmative defenses and counterclaims, common-law claims for fraudulent and negligent misrepresentations and for tortious interference with a contractual relationship. The fraudulent and negligent misrepresentation claims were premised on the theory that the bank falsely advised the Kruses that (a) the bank's judgment against Graham was a lien on the property the Kruses were buying for which they could be held personally responsible, and (b) the Kruses had no right to pay the Hannusches directly and credit those payments against their liability to Graham. By agreement of the parties, the pretrial order provided that the common-law actions were to be tried to a jury and that the court would decide the other claims on the same evidence offered at the jury trial. On the fraudulent and negligent misrepresentation claims, the jury returned a special interrogatory finding that the plaintiffs had failed to establish those claims by requisite proof. The jury also rejected the Kruses' claims based on tortious interference with a contractual relationship.

On the bank's claim, the court granted a judgment of foreclosure against the Kruses for the unpaid balance of the note and mortgage. On the Kruses' statutory claims, the court determined that as a matter of law the Iowa Consumer Credit Code

claims and the federal Truth in Lending Act claims did not apply to these transactions. In addition, it determined that statutory claims based on the Bank Holding Company Act and the Racketeer Influenced and Corrupt Organizations Act were matters subject to the exclusive jurisdiction of the federal courts.

## I. *Expert Testimony as to Misrepresentation of Law.*

▆▆▆▆ The first issue we consider is whether the trial court erred in refusing to permit an expert witness to testify for the Kruses concerning claimed legal misrepresentations by the bank. It was the Kruses' intention to have this witness testify that, if the representatives of the bank had in fact made certain representations of law concerning the Kruses' liability for the Graham judgment or the legal effect of that judgment on the Kruses' property, such representations were false. The trial court refused to receive this testimony. It indicated that the matter could best be handled by the court instructing the jury as to the controlling legal principles and permitting the jury to decide whether a misrepresentation had occurred based upon such instructions.

Although it is frequently stated that witnesses should not be permitted to give their opinion on questions of domestic law, *see, e.g., Miller v. Bonar*, 337 N.W.2d 523, 529 (Iowa 1983); 31 Am.Jur.2d *Expert and Opinion Evidence* § 69 (1967), there are exceptions to this rule. As presented in the committee comment accompanying Iowa Rule of Evidence 704, this limitation extends only to opinions of law which go the ultimate issue in the case. We think the same rule extends to opinions of law which relate to a rule of decision to be directly applied by the court or jury in determining the case, such as the elements of the cause of action.

The rule prohibiting legal opinions as to domestic law does not always apply, however, in situations where the legal issue is raised in such a manner that it becomes an operative fact to be proven within the case rather than a rule of decision for deciding the case. In *Martinson Manufacturing Co. v. Seery*, 351 N.W.2d 772, 778 (Iowa 1984), we recognized that within the "case within a case" context of a legal malpractice action it may be an issue of fact as to whether a lawyer's assessment of a legal proposition is correct. Arguably, the issue of the bank's misrepresentation of legal rights in the present case is presented within such a "case within a case" context.

While we believe it would have been permissible for the district court in its discretion to have permitted the expert testimony as bearing on an issue of operative fact, it was not error to decline to do so. We have frequently stated that a trial court is entitled to exercise a broad discretion in the admissibility of expert testimony. *E.g., Aller v. Rodgers Mach. Mfg. Co.*, 268 N.W.2d 830, 840 (Iowa 1978). The legal issues which bore upon the accuracy of the alleged representations in the present case were simple, straightforward and scarcely subject to dispute. Consequently, we believe that the trial court's decision to handle the matter by means of instructions to the jury was a permissible course of action and did not prejudice the Kruses' rights.

## II. *Instruction as to Knowledge of Attorney.*

▆▆▆ Next, we consider the Kruses' argument that the trial court erred in giving Instruction No. 14 which provides:

You are instructed that knowledge possessed by an attorney is chargeable to his client.

The Kruses contend that this instruction is overbroad, inaccurate and led the jury to believe that, because they were represented by an attorney in this transaction, they could not have been deceived.

We agree that the challenged instruction should not have been given for at least two reasons. First, the instruction is sweepingly overbroad and, as a consequence, could convey an erroneous impression to the jury. It is manifest that clients do not possess all knowledge on all subjects which their attorneys possess. To so advise a jury can only create false impressions as to the consequences of being represented by

an attorney. There may indeed be instances where a client is permitted to claim that he or she has been deceived by false representations even though an attorney representing that client was not similarly deceived.

To the extent instructions of this type serve any purpose they relate to a rule of agency whereby a third party who communicates to the client through an attorney is entitled to assume that such communications are passed on to the client. In the present case, we are unable to discern any issue with respect to the claimed misrepresentations which turn on knowledge imparted directly to the Kruses' attorney by the bank. Under the Kruses' theory of the case, the alleged representations were imparted directly to them. Under the bank's theory of the case, these statements were not made to anyone. Consequently, there was no reason to have given the instruction.

We believe the Kruses are entitled to a reversal of the judgment on the fraudulent and negligent misrepresentation claims as a result of the challenged instruction. The instruction may have misled the jury on the issue of whether, if the claimed false representations were made, the Kruses' reliance on such representations was justified. We do not deem it necessary to reverse the judgment on the claims for tortious interference with a contractual relationship. Because the fraudulent and negligent misrepresentation issues were submitted, in part, as an affirmative defense to the bank's claims, the bank's judgment and decree of foreclosure must also be reversed.

### III. *Instructions on Legal Effect of the Graham Judgment.*

▮▮ The Kruses also challenge the giving of Instruction No. 15 and Instruction No. 16. These instructions were as follows:

### *Instruction No. 15*

A seller of real estate by real estate contract who is also purchasing his interest in the real estate by real estate contract retains an equitable interest in the real estate until the purchase price is paid by the buyer and a deed is executed and delivered. The equitable interest is considered to be personal property for purposes of the law, and if not prohibited by the terms of the real estate contract, may be assigned to a third party.

The interest of the party to whom the assignment is made is equivalent to the interest of the party assigning the interest.

### *Instruction No. 16*

A money judgment entered in a county against a judgment debtor who owns real estate in that county will be a lien on the real estate of the judgment debtor in that county.

A judgment transcripted to the county of the situs of real estate of the judgment debtor will be a lien on the real estate of the judgment debtor in that county upon its transcription.

The judgment will not be an encumbrance against personal property of the party until further action of levy, garnishment or attachment is taken by the judgment debtor.

The Kruses contend that these instructions contained inaccurate statements of law.

While, arguably, these instructions require the jury to engage in too much legal analysis in deciding whether the bank's representations to the Kruses were false, they do not inaccurately state the law applicable to the transaction.[1] Whether the interest retained by a contract seller is properly described as an equitable interest (the Kruses contend it is not) is not significant. Disregarding the label, we find the nature of the respective interests is accurately described in these instructions.

---

1. The alleged representations, on which the Kruses' claims were based, were identified in the instructions. We believe it would have been preferable to have advised the jury, unequivocally, whether, if these representations were in fact made, they were, or were not, a correct statement of the Kruses' obligations.

IV. *Application of Iowa Consumer Credit Code and Federal Truth in Lending Act.*

■ The district court dismissed all claims under the Iowa Consumer Credit Code and the federal Truth in Lending Act based on a finding that the transaction was not primarily for personal, family, or household purposes. Under the provisions of Iowa Code section 537.1301(14)(a)(3) (1987), that finding renders the Iowa Consumer Code inapplicable. The same finding also negates applicability of the federal truth in lending regulations to the loan transaction involved in the present controversy. *Toy Nat'l Bank v. McGarr*, 286 N.W.2d 376, 378 (Iowa 1979); 15 U.S.C. § 1603(1). The testimony of Nancy Kruse as to the buyers' motivation for purchasing the property and evidence concerning their methods of handling interest and depreciation for tax purposes supports the district court's finding on these issues.

V. *Concurrent State Court Jurisdiction of Claims Brought Under 12 U.S.C. § 1972 and 18 U.S.C. § 1961.*

■ Finally, we consider the Kruses' claims that the district court erred in holding that actions predicated on 12 U.S.C. sections 1972 and 1975 and 18 U.S.C. section 1961 may only be pursued in the United States district courts. We disagree with this conclusion. Concurrent jurisdiction of state courts over actions predicated on 12 U.S.C. section 1972 is indicated in *Lane v. Central Bank of Alabama*, 756 F.2d 814, 817 (11th Cir.1985). In that case, the court noted that there should be a presumption that state courts have concurrent jurisdiction over claims predicated on federal law in order to avoid splitting of causes of action and to permit efficient joinder of all viable actions in a single case. *Id.* As observed by the court in *Lane*, review of the legislative history does not suggest otherwise. *Id.* We agree with this reasoning for purposes of concluding that there is concurrent state court jurisdiction with re-spect to Kruses' claims under 12 U.S.C. sections 1972 and 1975.

The decision in *Hometowne Builders, Inc. v. Atlantic Nat'l Bank*, 477 F.Supp. 717 (E.D.Va.1979), relied on by the bank and the trial court, indicated that exclusive federal jurisdiction of claims under 12 U.S.C. section 1972 was preferable because these statutes were, in effect, antitrust laws. That suggestion was rejected in *Lane.* Moreover, the statutory provision alleged to have been violated in the present case deals with the obligations between the bank and its customers *inter se* rather than being a regulation of dealings between financial institutions.

■ The Kruses also contend that the district court was incorrect in concluding that state courts do not have concurrent jurisdiction of civil actions based on the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961. Concurrent state court jurisdiction over these claims was found to exist in *Lou v. Belzberg*, 834 F.2d 730, 737 (9th Cir.1987), cert. denied, —— U.S. ——, 108 S.Ct. 1302, 99 L.Ed.2d 512 (1988); *DuBroff v. DuBroff*, 833 F.2d 557, 560 (5th Cir.1987); and *Simpson Electric Corp. v. Leucadia, Inc., 220,* 72 N.Y.2d 450, 453–54, 534 N.Y.S.2d 152, 154, 530 N.E.2d 860, 862 (1988). A contrary conclusion was reached in *Chivas Products Ltd. v. Owen*, 864 F.2d 1280, 1283–85 (6th Cir.1988). A full discussion of the competing views on the issue is found in the latter case and in *Morda v. Klein*, 865 F.2d 782, 783–84 (6th Cir.1989).

Notwithstanding some likelihood that concurrent state court jurisdiction exists under 18 U.S.C. section 1961, we need not finally resolve that issue. All aspects of the transaction for which the Kruses seek relief from the bank were fully disclosed in the evidence. Nothing presented even remotely suggests a basis for a claim under 18 U.S.C. section 1961. Consequently, there was no prejudice in the district court's refusal to consider the merits of that claim.[2]

---

2. In order to establish such a claim, it is required under 18 U.S.C. § 1961(5) that there be "at least two acts of racketeering activity, one of which occurred after the effective date of this chapter and the last of which occurred within ten years...." We doubt that the fraud alleged

We conclude that Kruses' claims under 12 U.S.C. sections 1972 and 1975 should be reinstated for trial on the merits. Section 1972 provides:

A bank shall not in any manner extend credit, lease or sell property of any kind, or furnish any service, or fix or vary the consideration for any of the foregoing on the condition or requirement—

. . . .

(C) that the customer provide some additional credit, property or service to such bank, other than those related to and usually provided in connection with the loan, discount, deposit, or trust service. . . .

Section 1975 provides for a civil action to recover treble damages based on violations of section 1972. It is the Kruses' contention that section 1972 was violated by requiring them to borrow more than $6000 in additional funds employed by the bank to satisfy the indebtedness of another customer for which they were not responsible.

We have considered all issues presented and conclude that the judgment of the district court must be reversed as to the claims of the plaintiff bank on the note and mortgage and as to defendants' counterclaims for fraudulent and negligent misrepresentation.[3] The judgment is also reversed with respect to defendants' counterclaims under 12 U.S.C. sections 1972 and 1975. The judgment is affirmed on all other matters. Costs on appeal are assessed seventy-five percent to appellee and twenty-five percent to appellants.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.

against the bank constitutes a racketeering activity as defined in 18 U.S.C. § 1961(1). *See Sedima, S.P.R.L. v. Imrex Co.,* 473 U.S. 479, 481–84, 105 S.Ct. 3275, 3277–78, 87 L.Ed.2d 346, 349–51 (1985). *See generally,* Note, *Civil RICO —Interpretation and Application of the Pattern of Racketeering Activity Requirement,* 13 J. Corp. L. 1073, 1076–77 (1988). Even if it does, only a single transaction is involved.

3. The record reflects that, because the judgment for the bank was not stayed pending this appeal, the mortgaged property was sold at execution sale. If the Kruses are ultimately successful, in whole or in part, in defending against the bank's claims, resort may be had to the remedies available under Iowa Code § 686.15 (1987).