MIDWEST HERITAGE BANK,
FSB, Appellee,

v.

Leroy NORTHWAY, Appellant.

No. 96–1647.

Supreme Court of Iowa.

March 25, 1998.

Alfredo Parrish of Parrish, Krudenier, Moss, Dunn & Montgomery, Des Moines, for appellant.

Stephen Meyer of Meyer Law Firm, West Des Moines, for appellee.

Considered by LARSON, P.J., and CARTER, SNELL, ANDREASEN, and TERNUS, JJ.

ANDREASEN, Justice.

Leroy Northway appeals from an adverse summary judgment ruling. Northway alleged in a counterclaim that Midwest Heritage Bank (Midwest) engaged in activities that violated 18 U.S.C. § 1962(c) (1995) of the Racketeer Influenced and Corrupt Organizations Act (RICO). We find there was no genuine issue of material fact and that summary judgment was appropriately granted. We affirm.

### I. *Background Facts and Proceedings.*

In May 1993, Northway approached Midwest about obtaining Farmers Home Administration (FmHA) loan guarantees for construction of a calf nursery. Northway alleges Midwest told him to start construction of the facility and that it would finance the construction in the event the FmHA did not guarantee the loans.

Midwest mailed an application for loan guarantees to the FmHA around the middle of September. Northway contends that Midwest misrepresented the nursery's state of construction in the application by indicating construction of the nursery had not yet begun when in fact it was already under con-struction. Northway also maintains Midwest misrepresented his assets and liabilities in a financial statement prepared and sent to the FmHA in November 1993. He urges Midwest's actions constitute mail fraud in violation of 19 U.S.C. § 1341. Midwest denies the allegations.

By December 1994, Northway had borrowed approximately $500,000 from Midwest. The loans were secured by real estate, livestock, machinery, and other personal property owned by Northway. In early February 1995, Midwest obtained loan guarantees from the FmHA in the amount of $270,000 for operating expenses associated with the nursery. Northway claims Midwest required part of the proceeds be applied to his pre-existing debt as a condition of the loan. He argued this was a violation of the loan agreement and of federal regulations. He therefore refused to sign the agreement. Northway urges Midwest's actions constitute fraud and misrepresentation.

Ultimately, Northway defaulted on the loans and Midwest began foreclosure proceedings against him. Northway counter-claimed in the foreclosure proceedings alleging Midwest's actions violated RICO. On April 11, 1996, Midwest was granted partial summary judgment. Judge James W. Brown entered summary judgment on the notes securing the loans and granted foreclosure. However, the judgment was stayed because of the pending counterclaim. Judge Brown ruled Midwest had not sufficiently established an absence of material facts in its summary judgment petition in regard to the RICO counterclaim.

After additional discovery, Midwest filed a second motion for summary judgment. Northway resisted and a hearing was held on the matter before Judge David L. Christensen. Judge Christensen granted Midwest's second motion for summary judgment on the RICO counterclaim. Northway appeals from the adverse ruling.

### II. *Scope of Review.*

Our review of an order granting summary judgment is for correction of errors at law. *Riley v. City of Hartley,* 565 N.W.2d 344, 346

(Iowa 1997). The party seeking summary judgment must show that there is no genuine issue of material fact and that they are entitled to judgment as a matter of law. Iowa R. Civ. P. 237(c). The record is reviewed in the light most favorable to the nonmoving party. *Sautter v. Interstate Power Co.,* 563 N.W.2d 609, 611 (Iowa 1997).

### III. *RICO.*

In our only decision involving RICO, we expressed our opinion that state courts likely had concurrent jurisdiction but we did not resolve the issue. *United Cent. Bank of Des Moines, N.A. v. Kruse,* 439 N.W.2d 849, 854 (Iowa 1989). Since *Kruse* was decided, the United States Supreme Court has resolved the issue in favor of concurrent jurisdiction. *See Tafflin v. Levitt,* 493 U.S. 455, 110 S.Ct. 792, 107 L.Ed.2d 887 (1990). This is our first opportunity to review a civil RICO claim.

RICO (codified at 18 U.S.C. §§ 1961–1968) imposes criminal and civil liability upon persons who engage in certain prohibited activity. A person found liable in a civil RICO action faces drastic penalties. *H.J. Inc. v. Northwestern Bell Tel. Co.,* 492 U.S. 229, 237, 109 S.Ct. 2893, 2899, 106 L.Ed.2d 195, 206 (1989). These penalties include treble damages, costs, and attorney's fees. 18 U.S.C. § 1964(c). Civil RICO is a potent cause of action that has been called "the litigation equivalent of a thermonuclear device." *Miranda v. Ponce Fed. Bank,* 948 F.2d 41, 44 (1st Cir.1991).

Although Northway alleged violations of four sections of RICO, he appeals only from the grant of summary judgment on his claim under section 1962(c). The statute provides:

It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

18 U.S.C. § 1962(c).

A "pattern of racketeering activity" requires at least two acts of racketeering activity in the last ten years. *Id.* § 1961(5); *H.J.*

*Inc.,* 492 U.S. at 237, 109 S.Ct. at 2899, 106 L.Ed.2d at 206. Acts of racketeering are also known as predicate acts. *Atlas Pile Driving Co. v. DiCon Fin. Co.,* 886 F.2d 986, 990 (8th Cir.1989). Only certain acts can be considered predicate acts. Qualifying acts are those listed in 18 U.S.C. § 1961(1).

### IV. *Enterprise.*

■ Case law interpreting the requirements of section 1962(c) has held that the defendant of a RICO suit must be different from the enterprise. *Libertad v. Welch,* 53 F.3d 428, 442 (1st Cir.1995); *Jaguar Cars, Inc. v. Royal Oaks Motor Car Co.,* 46 F.3d 258, 268 (3d Cir.1995); *Davis v. Mutual Life Ins. Co.,* 6 F.3d 367, 377 (6th Cir.1993); *Atlas Pile Driving Co.,* 886 F.2d at 995; *Bennett v. United States Trust Co.,* 770 F.2d 308, 315 (2d Cir.1985). *But see United States v. Hartley,* 678 F.2d 961, 990 (11th Cir.1982). Put another way "the enterprise must be an entity separate from the named defendant who ... allegedly engag[ed] in [the] unlawful activity." *Libertad,* 53 F.3d at 442.

The reason for this requirement hinges on the interpretation of section 1962(c). Section 1962(c) makes it "unlawful for any person *employed by or associated with any enterprise* " to participate in racketeering activity. Obviously, a person cannot associate with one's self and thus distinct entities are required.

The enterprise Northway claims participated in the RICO violation is Midwest. Midwest was alleged to be both the enterprise and the defendant. Because section 1962(c) requires two distinct entities, Northway's claim fails as a matter of law.

■ Northway attempted to save his claim by joining two additional parties as defendants, both of whom were employees of Midwest. While this might have saved his claim under section 1962(c), Northway failed to serve notice on the two other parties. Northway argues he still had time to serve the additional parties when the summary judgment ruling was issued and, therefore, the ruling was not appropriate. Any objection Northway had as to the district court's ruling on the issue was waived. To preserve

the procedural challenge for appeal, Northway should have filed a Rule of Civil Procedure 179(b) motion. *State Farm Mut. Auto. Ins. Co. v. Pflibsen,* 350 N.W.2d 202, 206 (Iowa 1984).

### V. *Pattern.*

■ A RICO pattern requires "at least two" predicate acts, but two acts while necessary, may not be sufficient to establish a pattern. *Sedima, S.P.R.L. v. Imrex Co.,* 473 U.S. 479, 496 n. 14, 105 S.Ct. 3275, 3285 n. 14, 87 L.Ed.2d 346, 358 n. 14 (1985). Two acts are the minimum number required by 18 U.S.C. § 1961(5). The Supreme Court has held that a "pattern," in addition to the two predicate acts, also requires

> the showing of a relationship between the predicates and the threat of continuing activity. It is this factor of *continuity plus relationship* which combines to produce a pattern. RICO's legislative history reveals Congress' intent that to prove a pattern of racketeering activity a plaintiff or prosecutor must show that the racketeering predicates are related, *and* that they amount to or pose a threat of continued criminal activity.

*H.J. Inc.,* 492 U.S. at 239, 109 S.Ct. at 2900, 106 L.Ed.2d at 208 (citations omitted).

The predicate acts Northway alleged are fraud and misrepresentation in connection with: (1) the September 1993 loan guarantee application; (2) his assets and liabilities in the November 1993 financial statement; and (3) the use of the proceeds from the February 1995 loan guarantees to pay pre-existing debt. For the purposes of this appeal we assume all three acts alleged by Northway constitute predicate acts.

#### A. Relatedness.

■ The relationship element of a pattern can be shown if the predicate acts "have the same or similar purposes, results, participants, victims, or methods of commission or otherwise are interrelated by distinguishing characteristics and are not isolated events." *Id.* at 240, 109 S.Ct. at 2901, 106 L.Ed.2d at 208. The district court found, assuming the acts alleged were predicate acts, that they were "merely isolated events that were not

related to one another in any discernible pattern."

In analyzing the relatedness of the alleged predicate acts, we find they had common participants; Northway, Midwest, and the FmHA. They also had a common victim, presumably the FmHA. They did not, however, share a common purpose. The September 1993 application and the misstated financial statement were arguably done to obtain loans. Applying the loan proceeds to pre-existing debt did not have the same purpose. Nor was there commonality of methods or results. We agree with the district court that Northway failed to show the acts were related.

#### B. Continuity.

The Supreme Court has said:

> "Continuity" is both a closed- and open-ended concept, referring either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition. It is, in either case, centrally a temporal concept—and particularly so in the RICO context, where *what* must be continuous, RICO's predicate acts or offenses, and the *relationship* these predicates must bear one to another, are distinct requirements. A party alleging a RICO violation may demonstrate continuity over a closed period by proving a series of related predicates extending over a substantial period of time. Predicate acts extending over a few weeks or months and threatening no future criminal conduct do not satisfy this requirement: Congress was concerned in RICO with long-term criminal conduct. Often a RICO action will be brought before continuity can be established in this way. In such cases, liability depends on whether the threat of continuity is demonstrated. Whether the predicates proved establish a threat of continued racketeering activity depends on the specific facts of each case.

*Id.* at 241–42, 109 S.Ct. at 2902, 106 L.Ed.2d at 209 (citations omitted).

■ Continuity is also problematic for Northway. He attempts to paint, with broad brush strokes, a picture of continuing crimi-

nal activity. To demonstrate continuity he relies on the premise that "where predicate acts or offenses are part of an ongoing entity's regular way of doing business" continuity can be shown. *Kehr Packages, Inc. v. Fidelcor, Inc.,* 926 F.2d 1406, 1412 (3d Cir.1991). He then makes sweeping generalizations about Midwest's regular way of doing business. He argues that since Midwest is a bank in Iowa and therefore presumably mails a large number of loan applications to the FmHA each year continuity is proven. Gross generalizations such as these are not sufficient to demonstrate continuity. Northway has, in essence, alleged the business of banking is a racketeering activity. As one court stated "[b]ankers do not become racketeers by acting like bankers." *Terry A. Lambert Plumbing v. Western Sec. Bank,* 934 F.2d 976, 981 (8th Cir.1991). No credible threat of ongoing activity was alleged or demonstrated. Most importantly, there was no allegation or evidence in the record of long-term criminal conduct. The district court ruled Northway failed as a matter of law to demonstrate continuity. We agree.

### VI. *Summary.*

Northway failed to show a pattern of racketeering activity. While he alleged the minimum number of necessary predicate acts, the record does not establish the additional factors of relationship and continuity. Additionally, he failed to meet the requirement that the enterprise and defendant be separate entities. Northway's claim was deficient as a matter of law and summary judgment was appropriately granted.

**AFFIRMED.**

All justices concur except TERNUS, J., who concurs specially.

TERNUS, Justice (concurring specially).

I concur in all but Division V(A) of the majority opinion. I disagree with the court's conclusion that the facts do not generate a jury question with respect to the relatedness of the predicate acts. A relationship is shown if the acts "have the same or similar purposes." *H.J. Inc. v. Northwestern Bell Tel. Co.,* 492 U.S. 229, 240, 109 S.Ct. 2893,

2901, 106 L.Ed.2d 195, 208 (1989). I submit a fact finder could conclude that the alleged misrepresentations to FmHA and the attempted application of FmHA loan proceeds to pre-existing debt had the "same or similar purpose," namely, to reduce Northway's indebtedness to Midwest. To achieve this purpose, it was necessary for Northway to obtain an FmHA loan and for Midwest to apply the loan proceeds to Northway's loan balance at Midwest. Thus, the alleged predicate acts could be found to be two steps toward the ultimate goal of reducing Northway's debt to the bank.