# IN THE COURT OF APPEALS OF IOWA

No. 18-0398
Filed February 20, 2019

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**ANDREW RUDOLPH WULF,**
        Defendant-Appellant.
_____

Appeal from the Iowa District Court for Davis County, Lucy J. Gamon, Judge.

Defendant appeals his convictions for ongoing criminal conduct and two counts of second-degree theft. **AFFIRMED.**

Mark C. Smith, State Appellate Defender, and Ashley Stewart, Assistant Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, and Louis S. Sloven, Assistant Attorney General, for appellee.

Considered by Potterfield, P.J., and Tabor and Bower, JJ.

**BOWER, Judge.**

Andrew Wulf appeals his convictions for ongoing criminal conduct and two counts of second-degree theft. We find there is sufficient evidence in the record to support Wulf's convictions. Wulf did not preserve error on his hearsay claims. We determine Wulf has not shown he received ineffective assistance on his claims defense counsel should have further challenged the sufficiency of the evidence or objected to alleged hearsay evidence. We preserve for possible postconviction relief two other claims of ineffective assistance. We affirm Wulf's convictions.

## I. Background Facts & Proceedings

Wulf owned and operated Whitetail Ridge Outfitters, LLC (WRO), which provided guided hunts for hunters. Out-of-state hunters may obtain a hunting license in Iowa. *See* Iowa Code § 483A.8(3) (2017). However, many out-of-state hunters do not have access to land in Iowa where they can hunt. A hunter may hire an outfitter or guide, who has obtained permission for hunting in certain locations. A fully guided hunt usually includes lodging, meals, and guide services, such as transporting the hunter to the location, setting up blinds or tree stands, and maintaining trail cameras. In a do-it-yourself or self-guided hunt, the outfitter might only provide access to the property for hunting.

In May 2016, Paul Rademaker entered into an agreement with WRO for a ten-day fully guided hunt in Iowa and Missouri beginning December 27, 2016, for $5000. Wulf paid for Rademaker's lodging at a motel in Bloomfield but only provided three or four meals, rather than the thirty meals Rademaker expected to receive. Also, Wulf never took Rademaker to any hunting locations. Wulf provided Rademaker with an electronic map with a pin on it and told Rademaker to go to

the location himself. Rademaker's Iowa hunting license was only valid in Zone 6, but one of the locations Wulf sent to Rademaker was in Zone 5, where it was illegal for Rademaker to hunt. No locations were in Missouri. Wulf did not provide Rademaker with any other guide services. After a few days, Rademaker contacted another outfitter who took him to hunting locations, provided blinds and tree stands, and information from trail cameras. Rademaker did not receive a refund from Wulf.

John Granberg entered into an agreement with WRO for a five-day fully guided hunt in Iowa, beginning December 27, 2016, for which he paid $2750. Wulf told Granberg to check in at the Bloomfield motel, where Wulf had paid for Granberg's lodging. Granberg wanted to go hunting that day. He exchanged calls and texts with Wulf, but Wulf never appeared to take him hunting. Granberg decided to leave Bloomfield. He went to another town and lined up another outfitter. Granberg asked Wulf for a refund but never got any money back.

In May 2016, Randall McMillan entered into a contract with WRO for a five-day fully guided hunt in Iowa in December 2016 and paid a deposit of $1250. Under the terms of the contract, McMillan would be refunded his deposit if he did not receive a nonresident antlered deer-hunting license.[1] McMillan did not receive a nonresident antlered deer-hunting license in the drawing. Wulf did not give McMillan a refund for his deposit.

Wulf was charged with ongoing criminal conduct, in violation of Iowa Code section 706A.2(4), a class "B" felony; and two counts of theft in the second degree,

---

[1] Each year, the Iowa Natural Resource Commission makes 6000 nonresident antlered or any sex deer hunting licenses available. Iowa Code § 483A.8(3)(c). These licenses are distributed by a drawing. *Id.* § 483A.8(3)(e).

in violation of section 714.2(2), a class "D" felony. A jury found Wulf guilty of these charges; he was sentenced to terms of imprisonment not to exceed twenty-five years, five years, and five years, all to be served concurrently. Wulf was ordered to pay restitution of $4725 to Rademaker, $2750 to Granberg, and $1250 to McMillan. Wulf appeals his convictions.

## II.      Sufficiency of the Evidence

Wulf was charged with ongoing criminal conduct by engaging in an act of specified unlawful activity under section 706A.2(4), which provides, "It is unlawful for a person to commit specified unlawful activity as defined in section 706A.1." Section 706A.1(5) defines "Specified unlawful activity," as "any act, including any preparatory or completed offense, committed for financial gain on a continuing basis, that is punishable as an indictable offense under the laws of the state in which it occurred and under the laws of this state." The underlying offense for the charge of ongoing criminal conduct was theft by deception under section 714.1(3). The two charges of second-degree theft were also based on a theory of theft by deception.

A person commits theft by deception when the person

> Obtains the labor or services of another, or a transfer of possession, control, or ownership of the property of another, or the beneficial use of property of another, by deception. Where compensation for goods and services is ordinarily paid immediately upon the obtaining of such goods or the rendering of such services, the refusal to pay or leaving the premises without payment or offer to pay or without having obtained from the owner or operator the right to pay subsequent to leaving the premises gives rise to an inference that the goods or services were obtained by deception.

Iowa Code § 714.1(3).

As relevant here, deception is defined as, "Creating or confirming another's belief or impression as to the existence or nonexistence of a fact or condition which is false and which the actor does not believe to be true." *Id.* § 702.9(1). Also, deception occurs when "[p]romising payment, the delivery of goods, or other performance which the actor does not intend to perform or knows the actor will not be able to perform. Failure to perform, standing alone, is not evidence that the actor did not intend to perform." *Id.* § 702.9(5).

Wulf claims there is not sufficient evidence in the record to show he engaged in theft by deception. He states there is insufficient evidence to show he obtained money from Rademaker, Granberg, and McMillan with the knowledge he did not intend to provide fully guided hunts when he accepted payment. He points out he provided successful guided hunt services in the past. He also points out he provided some of the services—he paid for lodging for Rademaker and Granberg. Wulf claims the State did not present sufficient evidence to show he did not intend to fulfill his obligations.

We review claims challenging the sufficiency of the evidence to support a conviction for the correction of errors of law. *State v. Wickes*, 910 N.W.2d 554, 563 (Iowa 2018). We will uphold a verdict if it is supported by substantial evidence. *State v. Ortiz*, 905 N.W.2d 174, 180 (Iowa 2017). "Evidence is considered substantial if, when viewed in the light most favorable to the State, it can convince a rational jury that the defendant is guilty beyond a reasonable doubt." *State v. Ramirez*, 895 N.W.2d 884, 890 (Iowa 2017) (citation omitted).

For the offense of theft by deception, a defendant must have the specific intent to deceive. *State v. Williams*, 674 N.W.2d 69, 72 (Iowa 2004). "Such intent

or knowledge must exist at the time the defendant makes the promise of payment, delivery, or performance." *State v. Rivers*, 588 N.W.2d 408, 410 (Iowa 1998). The intent to deceive may be shown by circumstantial evidence. *Id.*

Wulf's website showed a picture of a lodge, which Wulf did not own. Rademaker testified he went to the location for the lodge and found a partially constructed building, which appeared to be abandoned. Wulf told Rademaker there would be three meals a day, provided by an Amish cook.[2] At the time, Wulf received payment from Rademaker in May 2016, Wulf knew there was not a completed lodge and there was not an Amish cook. McMillan also testified he expected to stay in the lodge pictured on Wulf's website when he booked a hunting trip in May 2016.

Evidence of Wulf's intent to deceive can also be found in Wulf's failure to provide the fully guided hunting services Rademaker and Granberg paid for. Christopher Rullman, a former employee of Wulf's, testified in a fully guided hunt, "[a]s a guide, you pick up the hunters, eat dinner with the hunters, hang tree stands, trail cameras." Wulf did not provide these services for the hunters. At the time of trial, Rullman was operating his own outfitting business. He testified when he received payments from hunters he spent the money on leases, motels, food, gas, trail cameras, tree stands, blinds, and processing. There is no evidence Wulf spent money on any of these items, other than paying for Rademaker and Granberg to stay in a motel and three or four meals for Rademaker.

---

[2] During a telephone call shortly before Rademaker arrived, Wulf informed him the lodge had not been completed and there was no Amish cook. We are looking, however, at the question of Wulf's intent at the time he received payment from Rademaker.

Furthermore, Rademaker arranged with Wulf to go hunting in Iowa and Missouri. Wulf told Rademaker he was going to use the $5000 he received to obtain a lease on property in Missouri. In addition to not taking Rademaker to hunting locations, as would be expected in a fully guided hunt, Wulf did not provide Rademaker with any hunting locations in Missouri.

Looking at the circumstantial evidence presented in this case, we conclude there is sufficient evidence to show Wulf had the specific intent to deceive and this intent existed at the time he made promises of performance to Rademaker, Granberg, and McMillan.

## III. Hearsay Evidence

Wulf claims the district court erred by permitting Rademaker and Deputy Josh O'Dell to provide hearsay evidence. The State claims Wulf did not preserve error on this issue because he did not object at the time the statements were made during the trial. Wulf asserts he did not need to object because the district court made a definitive ruling on his motion in limine seeking to preclude the State from "introduc[ing] evidence from statements made by hunters who are not testifying at trial," on the grounds of hearsay. The court ruled:

> [T]he court will not allow hearsay, but the court will allow a witness to testify that they saw or heard something negative which then influenced their behavior as long as that testimony is otherwise relevant on any charge. So a witness can conceivably testify that he saw or read a negative account regarding the defendant and that then later changed his behavior, but the court will not allow further details as to how the account was negative or anything beyond that he received negative information. I haven't heard that the State was planning to introduce officers' testimony as to what other hunters said.

"[W]here a motion in limine is resolved in such a way it is beyond question whether or not the challenged evidence will be admitted during trial, there is no reason to voice objection at such time during trial." *State v. Tangie*, 616 N.W.2d 564, 569 (Iowa 2000) (quoting *State v. Miller*, 229 N.W.2d 762, 768 (Iowa 1975)). However, when a court's ruling on a motion in limine is not resolved "in such a way it is beyond question whether or not the challenged evidence will be admitted during trial," an objection is needed to preserve error. *Id.*

The district court ruled it would not permit hearsay evidence to be presented during the criminal trial. Wulf claims statements by Rademaker and Deputy O'Dell constituted hearsay. We conclude Wulf should have objected to the statements in order to preserve error on his hearsay claims. *See id.*

## IV. Ineffective Assistance

Wulf raises several claims of ineffective assistance of counsel. We conduct a de novo review of claims of ineffective assistance of counsel. *State v. Maxwell*, 743 N.W.2d 185, 195 (Iowa 2008). To establish a claim of ineffective assistance of counsel, a defendant must prove (1) counsel failed to perform an essential duty and (2) prejudice resulted to the extent it denied the defendant a fair trial. *Id.* A defendant's failure to prove either element by a preponderance of the evidence is fatal to a claim of ineffective assistance. *See State v. Polly*, 657 N.W.2d 462, 465 (Iowa 2003).

**A.** Wulf claims he received ineffective assistance as defense counsel did not challenge the sufficiency of the evidence to establish he engaged in thefts on a continuing basis, which was one of the elements of the offense of ongoing

criminal conduct. He states there was no evidence to show he was going to commit thefts in the future.

One element of ongoing criminal conduct is an "act . . . committed for financial gain on a continuing basis." Iowa Code § 706A.1(5); *State v. Rimmer*, 877 N.W.2d 652, 668 (Iowa 2016). In considering the term "continuing basis," the Iowa Supreme Court found there should be evidence of a pattern of activity, which "can be shown if the predicate acts 'have the same or similar purposes, results, participants, victims, or methods of commission or otherwise are interrelated by distinguishing characteristics and are not isolated events.'" *State v. Reed*, 618 N.W.2d 327, 334 (Iowa 2000) (quoting *Midwest Heritage Bank v. Northway*, 576 N.W.2d 588, 591 (Iowa 1998)). The court found continuity can refer to "a closed period of repeated conduct" or "past conduct that by its nature projects into the future with a threat of repetition." *Id.* There may be a "continuing basis," even when the defendant's acts occur over a short period time if there is a relationship between the acts. *See State v. Banes*, 910 N.W.2d 634, 640–41 (Iowa Ct. App. 2018).

We find the evidence shows Wulf engaged in theft by deception on a continuing basis. The thefts were similar in their nature, purpose, results, victims, and methods of commission. *See Reed*, 618 N.W.2d at 334. The evidence in the record shows Wulf repeatedly targeted out-of-state hunters by offering them fully guided hunts in Iowa, obtained deposits from the hunters, and had no intention of providing the promised services. Continuity here can be shown over "a closed period of repeated conduct," rather than by evidence of a future threat of repetition. *See id.*

Even if defense counsel had challenged the sufficiency of the evidence to show the offenses were committed on a continuing basis, such a challenge would have been unsuccessful. Defense counsel has no duty to pursue a meritless issue. *State v. Carroll*, 767 N.W.2d 638, 645 (Iowa 2009). We determine Wulf has not shown he received ineffective assistance of counsel on this ground.

**B.** On his hearsay claims Wulf raised an alternative argument, stating if we found he had not preserved error on his claims, defense counsel was ineffective for failing to object to the testimony during the trial.

Wulf notes Rademaker testified:

> I believe [Deputy O'Dell] called me at first. He heard about me through—there were other hunters in town here that knew me from home that I weren't aware were going to be here, and they had issues with Andy as well. So they went to make a formal complaint, and I believe they must have said something to Officer O'Dell about, "You might want to talk to Paul."

Rademaker also testified:

> I actually overheard a few people in town and had people talk with me, and the vibes I was getting and the things people were saying, I just had a bad, bad feeling about this whole situation, and the way he wasn't responding and the way—excuses and excuses.

Deputy Josh O'Dell testified Rademaker went to a location "that he had been told was Mr. Wulf's base of operations, where he was at, was not able to find Mr. Wulf there, found other hunters that were also there, also looking for Mr. Wulf, and appeared to be in the same condition."

Hearsay is an out-of-court statement "offered into evidence to prove the truth of the matter asserted in the statement." Iowa R. Evid. 5.801(c). "Evidence is not hearsay if it is not offered to show the truth of the matter asserted." *State v. Plain*, 898 N.W.2d 801, 812 (Iowa 2017). "An out-of-court statement offered only

to explain responsive conduct that is relevant to an aspect of the [S]tate's case is not offered to prove the truth of the matter asserted and is therefore not hearsay." *Id.* "Generally, an investigating officer may explain his or her actions by testifying as to what information he or she had, including its source, regarding the crime and the criminal." *State v. Elliott*, 806 N.W.2d 660, 667 (Iowa 2011). However, "[i]f [an] investigating officer specifically repeats a victim's complaint of a particular crime, it is likely that the testimony will be construed by the jury as evidence of the facts asserted." *Id.* (citation omitted).

We conclude the challenged testimony is not hearsay because it was not presented for the truth of the matter asserted but was presented to show responsive conduct. Rademaker's first challenged statement shows how he came to be in contact with Deputy O'Dell. Rademaker's second challenged statement shows why he decided to engage a different outfitter, although he had already paid for a fully guided hunt from Wulf. The challenged statement by Deputy O'Dell also explains Rademaker's decision to find another outfitter at additional expense.

If defense counsel had made an objection to the statements on the basis of hearsay, such an objection would not be valid as the statements were admissible to show responsive conduct. *See State v. Mann*, 512 N.W.2d 528, 536 (Iowa 1994). "Counsel does not fail to perform an essential duty by failing to raise a meritless objection." *State v. Lopez*, 872 N.W.2d 159, 169 (Iowa 2015). Wulf has not shown he received ineffective assistance of counsel on this issue.

**C.** Wulf claims he received ineffective assistance because defense counsel did not request a cautionary instruction regarding non-testifying witnesses' statements about their negative experiences with Wulf. Wulf claims if we

"determine[ ] the evidence discussed above was properly admitted for a non-hearsay purpose, counsel has a duty to request a limiting instruction." Wulf cites Iowa Rule of Evidence 5.105, which provides when evidence is admitted for a limited purpose, "the court, on timely request, must restrict the evidence to its proper scope and instruct the jury accordingly." "Our rules of evidence allow evidence to be admitted for a limited purpose even though that same evidence is inadmissible for another purpose." *State v. Decker*, 744 N.W.2d 346, 356 (Iowa 2008).

We determine the present record is not adequate for us to address this issue on appeal. *See State v. McNeal*, 867 N.W.2d 91, 106 (Iowa 2015) (noting we address claims of ineffective assistance of counsel on direct appeal only when the record is adequate). "We prefer to reserve such questions for postconviction proceedings so the defendant's trial counsel can defend against the charge." *Id.* at 105 (quoting *State v. Tate,* 710 N.W.2d 237, 240 (Iowa 2006)). "This is especially appropriate when the challenged actions concern trial strategy or tactics counsel could explain if a record were fully developed to address those issues." *Id.* at 105–06. We find this issue should be preserved for possible postconviction relief proceedings.

**D.**     Finally, Wulf claims he received ineffective assistance because defense counsel did not argue the challenged statements by Rademaker and Deputy O'Dell were inadmissible because they violated Wulf's rights under the Confrontation Clauses of the federal and Iowa constitutions.

"[T]he Confrontation Clause was intended to protect against the principal evil of testimonial statements in the absence of the declarant." *State v. Kennedy*,

846 N.W.2d 517, 522 (Iowa 2014). "Courts can only admit these testimonial statements in subsequent proceedings if the declarant is unavailable and there has been a prior opportunity for cross-examination." *Id.* Evidence is testimonial if it "contains statements made in circumstances that would lead witnesses to objectively believe the statements might be used at trial." *Id.* at 523.

From the present record it is not clear if the statements at issue were testimonial or not, and therefore, we cannot determine whether the Confrontation Clause should be applied. As the State points out, the statements in question might have arisen during depositions of witnesses who did not testify at trial. If this is the case, then the witnesses might have believed their statements would be used at trial. *See id.* If the statements arose under different circumstances, then the statements might not be testimonial in nature. *See id.* We conclude the record is not adequate for us to address this issue on appeal, and it may be raised during postconviction proceedings. *See McNeal*, 867 N.W.2d at 106.

We affirm Wulf's convictions for ongoing criminal conduct and two counts of second-degree theft.

**AFFIRMED.**