STATE of Iowa, Appellee,

v.

Stanley L. REED, Appellant.

No. 99–0947.

Supreme Court of Iowa.

Oct. 11, 2000.

Linda Del Gallo, State Appellate Defender, and David Arthur Adams, Assistant State Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, Mary E. Tabor, Assistant Attorney General, and Michael P. Short, County Attorney, for appellee.

LAVORATO, Justice.

A jury convicted Stanley L. Reed of violating several drug statutes and a statute prohibiting ongoing criminal conduct through specified unlawful activity. He challenges the ongoing-criminal-conduct statute on the grounds of overbreadth and vagueness under the Federal Constitution. He also contends the district court violated his double jeopardy rights when the court sentenced him for both the drug convictions and the ongoing-criminal-conduct conviction. Finally, he contends the court should have merged the sentence for these convictions pursuant to Iowa Code section 701.9. We affirm.

## I. Background Facts and Proceedings.

Steve Austin, a confidential informant, agreed with the Lee County drug task force to buy drugs from Reed. Acting under the supervision and monitoring of drug enforcement agents, Austin bought crack cocaine from Reed on three different occasions: November 23, 1998; December 11, 1998; and January 14, 1999.

On January 15, 1999, the police executed a search warrant at Reed's residence. They seized marijuana, cocaine, scanners, cash, food stamps, and a pistol. Police officers arrested Reed at another location. When the officers arrested Reed, they seized from him a bag of crack cocaine, a sum of money, and a pager.

After arresting Reed, the police contacted Renita Hill, Reed's girlfriend. While they were talking to Hill, Lamont Walker, a friend of Reed's, arrived at her residence. The police interrogated Walker about the location of Reed's stash of drugs. Walker agreed to cooperate with the police and led them to the home of Adraine Bradley. Bradley is Walker's sister. Reed and Walker had been paying Bradley $30 per month to store the drugs in her apartment.

Before the police arrived at Bradley's apartment, she had learned about Reed's arrest. Fearing that the police would arrest her next, she convinced a neighbor friend, Tonya Wilson, to take Reed's stash of drugs. The drugs were in a bag, and Bradley concealed the fact that the bag contained drugs. Bradley told Wilson that the bag contained a present for Bradley's boyfriend who was getting out of jail. Wilson asked her stepfather, Charles Edward Stepp, Jr., to take the bag and hold it for her. Stepp took the bag to his home. He was unaware the bag contained drugs.

A short time later, Walker called Bradley and learned that Bradley had gotten rid of the drugs. Walker told Bradley to retrieve the drugs. Bradley then told Wilson what was in the bag and told her to call her parents to tell them to bring the drugs back. Wilson called her parents, told them what was in the package, and asked them to return it. Walker and two police officers were waiting at Wilson's apartment when Wilson's parents brought the drugs back.

Walker took the bag containing the drugs from the trunk of the Stepps' car and handed the bag to the police officers who were present. The bag contained thirteen bags of marijuana and a sock containing a bag of cocaine.

The State charged Reed with two counts of delivery of a cocaine base, in violation of Iowa Code section 124.401(1)(c)(3) (1997); delivery of cocaine, in violation of Iowa Code section 124.401(1)(c)(2)(b) (1999); possession with intent to deliver more than five grams of cocaine or cocaine base, in violation of Iowa Code section 124.401(1)(b)(3); possession with intent to deliver marijuana, in violation of Iowa Code section 124.401(1)(d); ongoing criminal conduct through specified unlawful activity, in violation of Iowa Code sections 706A.2(4) and 706A.4 (1997); two counts of failure to affix a tax stamp for marijuana and cocaine, in violation of Iowa Code section 453B.12 (1999); and possession of a firearm by a felon, in violation of Iowa

Code section 724.26. The State also alleged that Reed was subject to the habitual offender provisions of Iowa Code section 902.8 for all charges and that Reed was also subject to the "second or subsequent offense" enhancement provisions of Iowa Code section 124.411. (Though the crimes were alleged to have occurred prior to July 1, 1999, the effective date of the 1999 Iowa Code, Reed did not object to being charged under that edition of the Code.)

A jury found Reed guilty on all counts except the marijuana charges. The State also agreed to dismiss the possession-of-a-firearm charge in exchange for Reed's admitting to the factual basis for the sentencing enhancements.

Pursuant to Iowa Code section 124.411, the district court imposed enhanced, indeterminate sentences and $1000 fines for each of the cocaine and cocaine-base delivery charges. The court additionally sentenced Reed to a term not to exceed seventy-five years plus a $5000 fine for his conviction of possession with intent to deliver. The court ordered these sentences to be served concurrently.

The court further sentenced Reed to twenty-five years for his conviction of ongoing criminal conduct through specified unlawful activity. Finally, the court imposed a sentence not to exceed five years for the tax stamp violation, plus a $1000 fine. The court also ordered these sentences to be served concurrently, but consecutively to the delivery and possession convictions.

On appeal, Reed contends that the term "specified unlawful activity" used in the ongoing-criminal-conduct statute is overbroad and vague. He further contends the district court violated his double jeopardy rights when the court sentenced him for both delivery of a controlled substance and ongoing criminal conduct. He also contends the district court erred in failing to merge these sentences pursuant to Iowa Code section 701.9. Finally, Reed contends the district court erred in concluding there was evidence corroborating two ac-

complices' testimony pertaining to his possession and drug tax stamp charges.

## II. The Overbroad and Vagueness Issue.

During trial, Reed moved unsuccessfully to dismiss the charge of ongoing criminal conduct on the basis of overbreadth and vagueness. Because Reed raises constitutional issues, our review is de novo. *State v. Ryan*, 501 N.W.2d 516, 517 (Iowa 1993).

Iowa Code section 706A.2(4) provides that "[i]t is unlawful for a person to commit specified unlawful activity as defined in section 706A.1." Iowa Code section 706A.1(5) defines "specified unlawful activity" to mean "any act, including any preparatory or completed offense, committed for financial gain on a continuing basis, that is punishable as an indictable offense under the laws of the state in which it occurred and under the laws of this state."

Reed contends that the terms "preparatory" and "continuing basis," as used in section 706A.1(5), are both constitutionally overbroad and vague.

**A. Overbreadth.** A statute is overbroad in violation of the Fourteenth Amendment to the Federal Constitution " 'if it attempts to achieve a governmental purpose to control or prevent activities constitutionally subject to state regulation by means which sweep unnecessarily broad and thereby invade the area of protected freedoms.' " *Ryan*, 501 N.W.2d at 517 (quoting *City of Maquoketa v. Russell*, 484 N.W.2d 179, 181 (Iowa 1992)). The overbreadth analysis is confined to an alleged violation of First Amendment rights. *Id.* at 518.

The problem with Reed's overbreadth claim is that, while he does attempt to show how Iowa Code section 706A.1(5) is overbroad, he fails to adequately explain what First Amendment right is violated, or at the very least, to make a First Amendment connection. For

this reason, we have nothing further to review. We therefore consider Reed's overbreadth argument waived. *See id.*

### B. Vagueness.

**1. The void-for-vagueness doctrine.** Under the Due Process Clause of the Fourteenth Amendment to the Federal Constitution, " 'the void-for-vagueness doctrine requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement.' " *State v. Hunter,* 550 N.W.2d 460, 463 (Iowa 1996) (quoting *Kolender v. Lawson,* 461 U.S. 352, 357, 103 S.Ct. 1855, 1858, 75 L.Ed.2d 903, 909 (1983)).

In *Hunter,* we noted that the void-for-vagueness doctrine protects several important values:

> "First, because we assume that man is free to steer between lawful and unlawful conduct, we insist that laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly. Vague laws may trap the innocent by not providing fair warning. Second, if arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who apply them. A vague law impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an ad hoc and subjective basis, with the attendant dangers of arbitrary and discriminatory application. Third, but related, where a vague statute 'abut[s] upon sensitive areas of basic First Amendment freedoms,' it 'operates to inhibit the exercise of [those] freedoms.' Uncertain meanings inevitably lead citizens to 'steer far wider of the unlawful zone ... than if the boundaries of the forbidden areas were clearly marked.' "

*Id.* (quoting *Grayned v. City of Rockford,* 408 U.S. 104, 108–09, 92 S.Ct. 2294, 2298–99, 33 L.Ed.2d 222, 227–28 (1972)).

**2. Standing.** When the State charges a defendant with violating a statute, the defendant has standing to claim the statute is unconstitutionally vague as applied to him or her. *Id.* This does not mean, however, that the defendant necessarily has standing to claim, in addition, that the statute is unconstitutional as applied to others, *i.e.,* a facial challenge. *Id.* If the statute is constitutional as applied to the defendant, the defendant lacks standing to make a facial challenge to the statute unless a recognized exception applies. *Id.* In *Hunter,* we recognized that "a facial challenge is permitted if a statute reaches a 'substantial amount' of protected conduct" under the First Amendment. *Id.* at 464.

Here, as the State correctly notes, Reed does not contend that Iowa Code chapter 706A reaches any protected conduct under the First Amendment. We therefore analyze this issue on an "as applied" basis only.

**3. Vagueness as applied.** As mentioned, "specified unlawful activity" means "any act, *including any preparatory or completed offense,* committed for financial gain on a *continuing basis,* that is punishable as an indictable offense under the laws of the state in which it occurred and under the laws of this state." Iowa Code § 706A.1(5) (emphasis added). As we said, Reed contends the terms "preparatory" and "continuing basis" are vague and have no fixed and understandable meaning in relation to the activity sought to be outlawed by the statute.

**a. Preparatory: Does the word "preparatory" refer to "act" or "completed offense"?** As to the word "preparatory," Reed argues that it is not clear whether the term refers to "act" or "completed offense." He asks whether the legislature intended the word "preparatory" to encompass any act that is done in preparation for the commission of an indictable offense or any completed offense. He concludes that, if the legislature was not

speaking of completed offenses, there remains no guidance to inform the individual as to what acts are covered by this statute.

In support of his argument, Reed points out that Iowa Code section 706A.1(5) is based upon the Model Ongoing Criminal Conduct Act [hereinafter Model Act] presented by the President's Commission on Model State Drug Laws. As he correctly notes, section 706A.1(5), unlike the Model Act, fails to include a listing of inclusive predicate offenses. *See State v. Olsen,* 618 N.W.2d 346 (Iowa 2000). Such a listing in the Model Act, Reed argues, makes clear that the definition of "specified unlawful activity" refers to completed offenses—the identified predicate offenses that represent key components of ongoing criminal networks. Reed concludes that the absence, however, of such a listing in section 706A.1(5) leaves the statute open to argument that the term "preparatory" need not refer to offenses and may well refer to the word "act."

Reed argues that if "preparatory" refers to "act" a person of ordinary intelligence would have no guidance as to what conduct is prohibited by section 706A.1(5). He contends that any act could be viewed as preparatory to the commission of an offense. He points out, for example, that the purchase of dark clothing could be viewed as preparatory to the commission of a burglary.

We reject Reed's argument. The word "preparatory" clearly refers to "offenses" rather than to "acts." Additionally, the "preparatory" offense referred to in section 706A.1(5) is limited to those offenses committed for financial gain on a continuing basis and that are punishable as an indictable offense. *See* Model Act § 4 cmt.

■ It is true that the Model Act limits the "preparatory or completed offenses" to "trafficking in controlled substances, homicide, robbery, extortion, extortionate extensions of credit, trafficking in explosives or weapons, trafficking in stolen property, or obstruction of justice."

Model Act § 4(e)(1). It is also true that section 706A.1(5) does not similarly limit "preparatory or completed offenses." We view this omission as legislative intent to make our statute more inclusive. *See Olsen,* 618 N.W.2d at 350. However, as we noted, the preparatory or completed offenses in section 706A.1(5) are still limited to those offenses committed for financial gain on a continuing basis and that are punishable as an indictable offense.

We conclude the word "preparatory" is not unconstitutionally vague on this ground.

■ **b. Whether the words "preparatory" and "continuing basis" are unconstitutionally vague.** Reed alternatively argues that the words "preparatory" and "continuing basis" lack a clearly definable meaning. Therefore, he argues, the words offer no guidance to the individual or to the officials charged with enforcing the laws. For reasons that follow, we reject Reed's argument that the words "preparatory" and "continuing basis" are unconstitutionally vague.

■ As the State points out, statutory terminology provides a defendant fair warning if the meaning of such terminology is " 'fairly ascertainable by reference to similar statutes, prior judicial determinations, reference to the dictionary, or if the questioned words have a common and generally accepted meaning.' " *Hunter,* 550 N.W.2d at 465 (quoting *State v. Kueny,* 215 N.W.2d 215, 217 (Iowa 1974)).

i. **"Preparatory."** The dictionary meaning of the word "preparatory" is "preparing or serving to prepare for something." Webster's Third New International Dictionary 1790 (unabr. ed.1993). Earlier we noted that the Model Act limits "preparatory or completed offenses" to "trafficking in controlled substances, homicide, robbery, extortion, extortionate extensions of credit, trafficking in explosives or weapons, trafficking in stolen property, or obstruction of justice." Model Act § 4(e)(1). The comment to this section

states that "specified unlawful activity" in section 4(e)(1) of the Model Act "should include not only the core offenses, such as offenses related to the provision of illicit goods and services such as drugs, fraud, theft, gambling, prostitution, child pornography, etc. but also offenses related to *support services* such as violence, corruption, obstruction of justice, money laundering and fencing." Model Act § 4(e)(1) cmt. (emphasis added). These latter offenses are considered "preparatory" because they prepare or serve to prepare for the core profit-making criminal offenses.

In the same vein, we think the Iowa legislature intended the term "preparatory" in section 706A.1(5) to extend the reach of unlawful activity beyond core offenses in criminal networks and enterprises such as narcotics trafficking and theft to offenses related to support services such as violence, corruption, obstruction of justice, money laundering and fencing. *See* Iowa Code § 706A.1(1) (defining criminal network), (2) (defining enterprise).

**ii. "Continuing basis."** We note that, unlike section 706A.1(5), the Model Act does not contain the language "on a continuing basis." "Continue" means "to be steadfast or constant in a course or activity." Webster's Third New International Dictionary 493. As the State suggests, "continuing basis" in section 706A.1(5) requires proof of a course of criminal activity as opposed to an isolated or one-time act. But as we shall explain, we think "continuing basis" means more than that.

We recently considered the concept of continuing criminal activity in *Midwest Heritage Bank, FSB v. Northway*, 576 N.W.2d 588 (Iowa 1998). In *Midwest*, we had before us a claim of racketeering in violation of 18 U.S.C. § 1962(c) (1995) of the Racketeer Influenced and Corrupt Organizations Act (RICO). That statute makes it unlawful

> for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a *pattern of racketeering activity* or collection of unlawful debt.

18 U.S.C. § 1962(c) (emphasis added).

We were considering in *Midwest* what constitutes a "pattern of racketeering." The statute expressly required at least two acts of racketeering. *Midwest*, 576 N.W.2d at 590, 591. In addition to the two acts, however, we noted that there must also be a

> "showing of a relationship between the predicates [acts of racketeering] and the threat of continuing activity. It is this factor of *continuity plus relationship* which combines to produce a pattern. RICO's legislative history reveals Congress' intent that to prove a pattern of racketeering activity a plaintiff or prosecutor must show that the racketeering predicates are related, *and* that they amount to or pose a threat of continued activity."

*Midwest*, 576 N.W.2d at 591 (quoting *H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 239, 109 S.Ct. 2893, 2900, 106 L.Ed.2d 195, 208 (1989)).

We also noted in *Midwest* that "[t]he relationship element of a pattern can be shown if the predicate acts 'have the same or similar purposes, results, participants, victims, or methods of commission or otherwise are interrelated by distinguishing characteristics and are not isolated events.'" *Id.* (quoting *H.J.*, 492 U.S. at 240, 109 S.Ct. at 2901, 106 L.Ed.2d at 208).

We further noted in *Midwest* that, as to the continuity element, *H.J.* said:

> "'Continuity' is both a closed- and open-ended concept, referring either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition. It is, in either case, centrally a temporal concept—and particularly so in the RICO context, where *what* must be continuous, RICO's predicate acts or offenses, and the *relationship* these predi-

cates must bear one to another, are distinct requirements. A party alleging a RICO violation may demonstrate continuity over a closed period by proving a series of related predicates extending over a substantial period of time. Predicate acts extending over a few weeks or months and threatening no future criminal conduct do not satisfy this requirement: Congress was concerned in RICO with long-term criminal conduct. *Often a RICO action will be brought before continuity can be established in this way. In such cases, liability depends on whether the threat of continuity is demonstrated. Whether the predicates proved establish a threat of continued racketeering activity depends on the specific facts of each case."*

*Id.* (quoting *H.J.,* 492 U.S. at 241–42, 109 S.Ct. at 2902, 106 L.Ed.2d at 209) (emphasis added).

Given the similarity between the underlying purposes of RICO and Iowa Code chapter 706A, we think the interpretation given to "pattern of racketeering activity" by the United States Supreme Court in *H.J.* is a reasonable one for "continuing basis" in section 706A.1(5). Applying that interpretation here, we conclude Reed's conduct falls squarely within the conduct targeted by the Iowa legislature. The relationship element is easily met: the predicate acts—at least three completed offenses of dealing drugs over a two-month period—have the same or similar purpose. That purpose, of course, was to make a profit by dealing drugs.

The predicate acts and the circumstances surrounding those acts also established a threat of continued drug dealing. The "stash" of drugs recovered, the evidence of numerous past drug sales, and the payment of $30 per month to store the "stash" all indicate that Reed (1) had an ongoing business in dealing drugs and (2) intended to continue such business in the future.

## III. Double Jeopardy and Merger Pursuant to Iowa Code Section 701.9.

Reed contends that the district court violated his double jeopardy rights under the Fifth Amendment to the Federal Constitution when the court sentenced him for both ongoing criminal conduct and the separate instances of delivery of cocaine that the State used to prove the ongoing-criminal-conduct charge. In support of his contention, Reed argues that delivery of cocaine is a lesser included offense of ongoing criminal conduct, and because the district court sentenced him for both offenses, the sentence violated the prohibition against multiple punishments for the same offense. Reed further argues that because (1) delivery is a lesser included offense of ongoing criminal conduct and (2) the legislature never intended double punishments, the court should have merged his convictions and sentences for delivery with his conviction and sentence for ongoing criminal conduct under Iowa Code section 701.9.

■■■ Because Reed's double jeopardy challenge raises a constitutional issue, our review is de novo. *See State v. Perez,* 563 N.W.2d 625, 627 (Iowa 1997). We review Reed's challenge that the sentences imposed violate section 701.9 for correction of errors at law. *Id.*

■■■ **A. Double jeopardy.** The Double Jeopardy Clause of the Federal Constitution provides that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const. amend. V. This constitutional provision is binding on the states through the Fourteenth Amendment to the Federal Constitution. *Benton v. Maryland,* 395 U.S. 784, 794, 89 S.Ct. 2056, 2062, 23 L.Ed.2d 707, 716 (1969). The Double Jeopardy Clause provides protection against (1) successive prosecutions after acquittal, (2) successive prosecutions after conviction, and (3) multiple punishments for the same offense. *North Carolina v.*

*Pearce*, 395 U.S. 711, 717, 89 S.Ct. 2072, 2076, 23 L.Ed.2d 656, 664–65 (1969). This appeal involves protection against punishments for the same offense.

■■■■ The Double Jeopardy Clause is limited in its application in those instances in which, as here, multiple punishments are imposed pursuant to a single prosecution. *Perez*, 563 N.W.2d at 627. This is because the multiple-punishment prohibition "does no more than prevent the sentencing court from prescribing greater punishment than the legislature intended." *Missouri v. Hunter*, 459 U.S. 359, 366, 103 S.Ct. 673, 678, 74 L.Ed.2d 535, 542 (1983). Therefore, as we have observed, "the question of what punishments are constitutionally permissible is no different from the question of what punishments the legislature intended to be imposed." *State v. McKettrick*, 480 N.W.2d 52, 57 (Iowa 1992). The courts, however, must presume that " 'in the absence of a clear indication of contrary legislative intent,' " the legislature ordinarily does not intend cumulative punishment. *Hunter*, 459 U.S. at 366, 103 S.Ct. at 678, 74 L.Ed.2d at 542 (quoting *Whalen v. United States*, 445 U.S. 684, 691–92, 100 S.Ct. 1432, 1437–38, 63 L.Ed.2d 715, 724 (1980)).

■■■■ The issue here is whether Reed can be sentenced both for the separate instances of delivery of cocaine and for ongoing criminal conduct. Because Reed's double jeopardy challenge arises from convictions in a single prosecution, our analysis begins with a search for legislative intent. *See Perez*, 563 N.W.2d at 628. In determining that intent, we first look to the face of the statute. *See id.* If, after considering the language of the statute, there is an absence of clear legislative intent for cumulative punishment, we then resort to the "same elements" test—a rule of statutory construction—articulated in *Blockburger v. United States*, 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306, 309 (1932). *See id.*

We need not resort to the same-elements test here because, for reasons that follow, we think the legislature intended cumulative punishment. In Iowa Code section 706A.5(1), the legislature has made clear its intent to punish as a class "B" felony both preparatory and completed offenses that are committed on an ongoing basis for profit and that are indictable offenses. Had the legislature intended to prohibit cumulative punishments for indictable-offense convictions as part of the specified unlawful activity, we think it would have done so directly as it did for conspiracies in Iowa Code section 706.4. Section 706.4 expressly prohibits multiple punishments for a conspiracy to commit a public offense and any public offense that might be committed pursuant to such conspiracy.

Additionally, we may consider whether the statutes that were violated serve differing purposes. *See State v. Halliburton*, 539 N.W.2d 339, 344 (Iowa 1995). Here, as the State suggests, the ongoing-criminal-conduct statute focuses on reducing the economic power of those who engage in ongoing illegal business for profit. *See* 1996 Iowa Acts ch. 1133. The provisions of Iowa Code section 124.401, on the other hand, focus on curtailing the trafficking of controlled substances. This distinction in purpose is evidence that the legislature intended to punish both offenses.

■■■ As mentioned, our ongoing-criminal-conduct statute and RICO serve similar purposes. On an issue like the one confronting us, the eighth circuit held:

We see "nothing in the RICO statutory scheme which would suggest that Congress intended to preclude separate convictions." Instead, we conclude that Congress clearly intended to permit, and perhaps sought to encourage, the imposition of cumulative sentences for RICO offenses and the underlying crimes.

*United States v. Kragness*, 830 F.2d 842, 864 (8th Cir.1987) (citations omitted); *see also United States v. Truglio*, 731 F.2d 1123, 1129 (4th Cir.1984); *United States v.*

*Sutton,* 700 F.2d 1078, 1081 (6th Cir.1983), *overruled on other grounds by United States v. Burgos,* 94 F.3d 849, 861–62 (4th Cir.1996); *United States v. Rone,* 598 F.2d 564, 571 (9th Cir.1979). We likewise see nothing in our ongoing-criminal-conduct statute that suggests our legislature intended to preclude separate convictions and sentences for the ongoing criminal conduct and underlying crimes used to establish such conduct. We too think the Iowa legislature sought to encourage the imposition of such cumulative sentences.

**B. Merger pursuant to Iowa Code section 701.9.** Iowa Code section 701.9—Iowa's merger statute—provides:

> No person shall be convicted of a public offense which is necessarily included in another public offense of which the person is convicted. If the jury returns a verdict of guilty of more than one offense and such verdict conflicts with this section, the court shall enter judgment of guilty of the greater offense only.

Our resolution of Reed's double jeopardy claim renders this section inapplicable. *See Halliburton,* 539 N.W.2d at 344 (holding that, if Double Jeopardy Clause is not violated because legislature intended double punishment, section 701.9 is not applicable and merger is not required).

### IV. Corroboration of Accomplices' Testimony.

The last issue Reed raises is that the district court erred in concluding there was substantial evidence corroborating two accomplices' testimony pertaining to his possession and drug tax stamp charges. We decline to address this issue because Reed failed to properly preserve the issue for our review. *See State v. McCright,* 569 N.W.2d 605, 607 (Iowa 1997) (holding that issues not raised before the district court cannot be asserted for the first time on appeal).

### V. Disposition.

In sum, we conclude that Iowa Code section 706A.1(5) is not unconstitutionally vague. We further conclude the district court did not violate Reed's double jeopardy rights when the court sentenced him for both delivery of a controlled substance and ongoing criminal conduct. Finally, we conclude the district court did not err in failing to merge these sentences pursuant to Iowa Code section 701.9.

**AFFIRMED.**

All justices concur except CARTER, J., who concurs in part and dissents in part, and TERNUS, J., who takes no part.

CARTER, Justice (concurring in part; dissenting in part).

I concur with all of the opinion except the merger analysis in Division IIIB. On the merger issue, I believe that under the analysis of lesser included offenses applied in *State v. Turecek,* 456 N.W.2d 219, 223 (Iowa 1990), the offense of delivery of cocaine was a lesser included offense within the ongoing-criminal-conduct charge. For the reasons stated in my special concurring opinion in *State v. Daniels,* 588 N.W.2d 682, 685 (Iowa 1998), that circumstance requires merger of the two offenses pursuant to section 701.9.