# IN THE COURT OF APPEALS OF IOWA

No. 15-1939
Filed February 24, 2016

**IN THE INTEREST OF S.H., S.H., R.H., N.H., and L.H.,
Minor Children,**

**R.H., Father,
Appellant,**

_____

Appeal from the Iowa District Court for Worth County, Annette Boehlje, District Associate Judge.

A father appeals the juvenile court's termination of his parental rights to his children, Sa.H., Si.H., R.H., N.H., and L.H. **AFFIRMED.**

Richard N. Tompkins, Jr., of Tompkins Law Office, Mason City, for appellant father.

Thomas J. Miller, Attorney General, and Kathryn K. Lang, Assistant Attorney General, for appellee State.

Patrick J. Rourick, of Patrick J. Rourick Law Office, Saint Ansgar, for minor children.

Considered by Danilson, C.J., and Vogel and Potterfield, JJ.

**POTTERFIELD, Judge.**

A father appeals the juvenile court's termination of his parental rights to his children, Sa.H., Si.H., R.H., N.H., and L.H.[1] The father makes four separate arguments. First, he argues the State failed to prove the grounds for termination by clear and convincing evidence. Second, he argues the Iowa Department of Human Services (DHS) failed to make reasonable efforts towards reunification. Third, he argues he and his family were denied their constitutional rights under the United States Constitution and Iowa Constitution because they were denied the opportunity to freely exercise their religious beliefs by handling family matters on their own within their Amish community. Fourth, he argues termination was not in the children's best interests. We find all four of the father's arguments fail and therefore affirm.

## I. Background Facts and Proceedings

This matter involves an Old Order Amish family. The father and mother have ten children, five of whom were part of the termination proceedings before the juvenile court. Sa.H. is a seventeen-year-old boy, born in 1999. Si.H. is a fifteen-year-old boy, born in 2001. R.H. is a thirteen-year-old boy, born in 2002. N.H. is a ten-year-old boy, born in 2005. L.H. is an eight-year-old girl, born in 2008. The father and mother's other five children—four more sons and another daughter—are now legal adults.

The family first came to the attention of DHS in August 2013, when the older of the couple's two daughters—V.H., who was then sixteen years old—

---

[1] The mother also filed a notice of appeal. However, she did not timely file her petition on appeal and the Iowa Supreme Court dismissed her appeal on December 15, 2015. We therefore consider only the father's appeal.

alleged she had been sexually assaulted by the father when she was eleven. When DHS spoke with V.H.'s siblings as a part of its investigation into the alleged sexual abuse, several of the children alleged physical abuse. A DHS child protective services assessment resulted in founded allegations the father had sexually abused V.H. and physically abused Sa.H.

When V.H. made her allegation in August 2013, the father and mother were away in Pennsylvania to receive marriage counseling. They had been gone since April. In the couple's absence, their children had been divided amongst other members of their Amish community. The father and mother were still absent on September 30, 2013, when a child in need of assistance (CINA) adjudication hearing was held for the couple's six minor children—the five currently at issue plus V.H. Following the CINA adjudication hearing, the children were formally removed from the father and mother's household, although as a practical matter they simply remained placed with other members of their Amish community. Contact between the father and mother and their children was left to the discretion of DHS.

DHS worked with the Amish community to determine what services would be made available to meet the family's needs. Because of the family's strict adherence to the Old Order Amish way of life, DHS had some difficulty providing such services. For example, although the juvenile court ordered therapy for both the parents and the children, transportation issues combined with a refusal to utilize any non-Christian counseling or therapy resulted in a failure to obtain consistent therapy for everyone. From the small pool of options that satisfied the Amish community's requirements, one therapist was found for the father and

mother and another was found for V.H. and Sa.H., but none was available for the youngest four children. As a result, therapy for the youngest children was inconsistent and not regularly monitored by DHS.

The father and mother initially participated in a few supervised visits, although only with the youngest three children because V.H., Sa.H., and Si.H. refused to go. The visitation reportedly went well but was short-lived because V.H. and Sa.H.'s therapist recommended all visits be ended until both she and the parents' therapist agreed further visitation would not be harmful to the children. Even without official visits, the father and mother continued to see their children regularly at community and church functions because of the small and tight-knit nature of their community, which consisted of only approximately fifteen families.

The father and mother both made efforts to reunite with their children. They met with their own therapist both individually and as a couple. Both admitted problems with their parenting and worked to improve themselves. However, the father and mother were never again granted visitation with their children because V.H. and Sa.H.'s therapist would not agree to it. She believed visitation should not occur until the father had fully admitted to sexually abusing V.H., which the father denied. The father did not make progress in that area. The parents' therapist testified he was never told why visitation was suspended, and he believed the visits should have continued.

Following the termination hearing held on October 30, 2015, the juvenile court summarized its findings on this crucial issue in its written rulings for each of the five children at interest:

Although the visitation could have been handled better by a more frequent update by both therapists throughout the process, which should have been coordinated by [DHS], the stumbling block that still exists is [the father's] refusal to admit to the sexual abuse of [V.H.] and his lack of treatment for that issue. This is particularly concerning given the age of [L.H.], the youngest child. Further, the parents have not fully admitted to all of the physical abuse of the boys, even though they have admitted to "harsh" discipline that they now see could have been handled differently.

. . . .

Despite their progress on some issues, the untreated issue of sexual abuse still persists in this matter. This matter has been pending for nearly two years. The children cannot continue to wait in limbo to see if [the father] will make progress on this issue or not.

Because the juvenile court found the father's abusive behavior had not been treated and the children could therefore not be safely returned to the father's care, it terminated the father and mother's parental rights to Sa.H., Si.H., R.H., N.H., and L.H. under Iowa Code section 232.116(1)(d) and (f) (2015).

The father appeals.

## II. Standard of Review

We conduct a de novo review of proceedings terminating parental rights. *In re A.M.*, 843 N.W.2d 100, 110 (Iowa 2014). An order terminating parental rights will be upheld if there is clear and convincing evidence of grounds for termination under Iowa Code section 232.116. *In re D.W.*, 791 N.W.2d 703, 706 (Iowa 2010). Evidence is "clear and convincing" when there are no serious or substantial doubts as to the correctness of conclusions drawn from it. *Id.* We give weight to the factual determinations of the juvenile court, particularly regarding the credibility of witnesses, although we are not bound by them. *Id.* The primary consideration of our review is the best interests of the child. *In re A.B.*, 815 N.W.2d 764, 776 (Iowa 2012).

We also conduct a de novo review when constitutional issues are raised. *State v. Reed*, 618 N.W.2d 327, 331 (Iowa 2000).

### III. Analysis

Termination of parental rights under Iowa Code chapter 232 follows a three-step analysis. *See In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010). First, the court must determine if a ground for termination under section 232.116(1) has been established. *Id.* Second, if a ground for termination is established, the court must apply the framework set out in section 232.116(2) to decide if proceeding with termination is in the best interests of the child. *Id.* Third, if the statutory best-interests framework supports termination of parental rights, the court must consider if any statutory factors set forth in section 232.116(3) should serve to preclude termination. *Id.*

### A. Grounds for Termination

The father first challenges the sufficiency of the evidence to support the juvenile court's findings that "clear and convincing" grounds for termination were established. The juvenile court terminated the father's parental rights to each child on two different grounds, set forth in Iowa Code section 232.116(1)(d) and (f). When a juvenile court terminates parental rights on more than one ground, as it has in this case, we may affirm the order on any of the statutory grounds supported by the record. *D.W.*, 791 N.W.2d at 707.

Section 232.116(1)(f) provides that a juvenile court may terminate parental rights to a child if the court finds each of the following:

> (1) The child is four years of age or older.
> (2) The child has been adjudicated a child in need of assistance pursuant to section 232.96.

> (3) The child has been removed from the physical custody of the child's parents for at least twelve of the last eighteen months, or for the last twelve consecutive months and any trial period at home has been less than thirty days.
>
> (4) There is clear and convincing evidence that at the present time the child cannot be returned to the custody of the child's parents as provided in section 232.102

The first three elements are not contested on appeal. Upon our de novo review, we find the State proved by clear and convincing evidence Sa.H., Si.H, R.H., N.H., and L.H. could not be returned to the father's custody at the time of the October 20, 2015 termination hearing. The State presented two witnesses—V.H. and Sa.H.'s therapist, and the DHS social worker who coordinated the family's services—who supported termination and explained the importance of the father's failure to accept responsibility for the abusive behavior that had led to his children's removal. We recognize the juvenile court also heard testimony from the parents' therapist, who disagreed with the State's witnesses, and received into evidence a generally positive mental health examination of the father by a clinical psychologist. But we give weight to the juvenile court's factual determinations on our de novo review of the record, particularly regarding witness credibility. The juvenile court found the State's witnesses more credible and persuasive, and we agree the State provided ample evidence to support "clear and convincing" proof the children could not be returned to the father's care at the time of the termination hearing.

## B. Reasonable Efforts Towards Reunification

Second, the father argues DHS did not make reasonable efforts towards reunification in this case. Following removal of the children from the parents' custody, the State was obligated to "make every reasonable effort" to reunify the

family as quickly as possible, consistent with the best interests of the children. *See* Iowa Code § 232.102(7). "The focus [of reasonable efforts] is on services to improve parenting. However, it also includes visitation designed to facilitate reunification while providing adequate protection for the child." *In re C.B.*, 611 N.W.2d 489, 493 (Iowa 2000). "[T]he nature and extent of visitation is always controlled by the best interests of the child." *In re M.B.*, 553 N.W.2d 343, 345 (Iowa 1996).

In determining whether reasonable efforts have been made, a court must consider "[t]he type, duration, and intensity of services or support offered or provided to the child and the child's family." Iowa Code § 232.102(10)(a)(1). But "the reasonable efforts requirement is not viewed as a strict substantive requirement of termination." *C.B.*, 611 N.W.2d at 493. Instead, it impacts the State's burden of proving those elements of termination which require reasonable efforts. *Id.* "The State must show reasonable efforts as a part of its ultimate proof the child cannot be safely returned to the care of a parent." *Id.* Finally, while the State has an obligation to make reasonable efforts, it is the parents' responsibility to object to, or challenge the sufficiency of, the services offered at the time when they are offered. *See In re H.L.B.R.*, 567 N.W.2d 675, 679 (Iowa Ct. App. 1997); *In re C.D.*, 508 N.W.2d 97, 101 (Iowa Ct. App.1993).

Upon our de novo review, we find DHS made the reasonable efforts required. Although the services provided by DHS were not perfect, the social worker who coordinated them went to great efforts to ensure the family had what services she could offer that were also approved by the father and mother's strict Old Order Amish community. We will not hold DHS at fault because a limited

range of services was deemed acceptable. Furthermore, the father was aware V.H. and Sa.H.'s therapist would agree to reinstitute visitation only after he made progress in addressing the specific allegations of sexual and physical abuse, but he never complained of deficient services or requested any additional therapy or services. It is too late now to do so.

### C. Constitutional Right to Freedom of Religion

Third, the father argues the termination proceedings have denied him and his family the right to freely exercise their religion because they have been denied the opportunity to "handle these matters within their Amish community." His argument is entirely undeveloped on appeal aside from a reference to the Iowa and United States Constitutions and the factual statement, "The [juvenile] court overruled and denied the motion to dismiss." His argument is also not properly preserved on appeal with respect to the Iowa Constitution because he only mentioned the United States Constitution in his oral motion before the juvenile court.

Even if the father's argument were properly preserved and more fully developed, we would still find it to be meritless. The father argues his religious beliefs should serve to keep the State from interfering in his family affairs even when his children make allegations of sexual and physical abuse. But our court has recognized in the past that the State "may intervene to prevent or stop certain conduct that presents a health or safety hazard, despite individuals' religious beliefs." *In re N.F.*, No. 02-1674, 2002 WL 31758353, at *2 (Iowa Ct. App. Dec. 11, 2002) (citing with approval cases from several other states which stand for the propositions that a state's compelling interest in protecting children

from abuse justifies interference with religious practices and that the juvenile court's assumption of jurisdiction over abused children does not violate the parents' constitutional right to the free exercise of religion). The father's strict adherence to an Amish lifestyle does not mean the State is powerless to step in and protect his children from abuse.

### D. Best Interests of the Children

Finally, the father argues termination was not in the best interests of his children. We disagree. In considering the best interests of the children at issue, we must "give primary consideration to the [children's] safety, to the best placement for furthering the long-term nurturing and growth of the [children], and to the physical, mental, and emotional condition and needs of the [children]." Iowa Code § 232.116(2). The father's children have been removed from his care for more than two years, during which time they have become integrated into the homes of other members of their Amish community. The children have responded well to their placements. The father has not adequately addressed his past abusive behavior, and as such cannot provide a safe and nurturing home for his children. We agree with the juvenile court that the children have waited long enough for permanency and termination is in their best interests.

Because we find termination is in the children's best interests, and no statutory factors preclude termination, we affirm the juvenile court's termination of the father's parental rights to his children, Sa.H., Si.H., R.H., N.H., and L.H.

**AFFIRMED.**