# IN THE COURT OF APPEALS OF IOWA

No. 15-0274
Filed August 31, 2016

**STATE OF IOWA,**
    Plaintiff-Appellee,

**vs.**

**CHRISTOPHER HARLEY SIMMS,**
    Defendant-Appellant.
_____

Appeal from the Iowa District Court for Dubuque County, Monica L. Ackley, Judge.

A defendant appeals from the jury trial finding him guilty of ongoing criminal conduct and the judgment and sentence imposed. **REVERSED AND REMANDED.**

Mark C. Smith, State Appellate Defender, and Mary K. Conroy, Assistant Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, Louis S. Sloven, Assistant Attorney General, for appellee.

Considered by Danilson, C.J., Mullins, J., and Goodhue, S.J.

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2015).

**GOODHUE, Senior Judge.**

Christopher Harley Simms appeals the judgment entered and the sentence imposed after a jury found him guilty of ongoing criminal conduct.

## I. Background Facts

In February 2013, Simms started a nonprofit organization he named Forged By Fire (FBF). The purpose of the organization, as stated in the articles of incorporation, was to assist prisoners with "finding housing, finding employment, job skills, training and connecting with drug and alcohol abuse providers" upon their release. Simms sought out and obtained donations from those who lived in or around Dubuque. When collecting donations, Simms would explain the purpose of FBF, emphasizing he wanted to help veterans, in particular.

Simms had as many as three men living in his home at one time, all apparently with some degree of drug problems. One of the young men, Dakota Goarcke, often accompanied Simms in his solicitation efforts, and Simms referred to Goarcke as one of the people he was helping. Simms and Goarcke had met the day Goarcke was released from drug rehabilitation, and within twenty-four hours, Simms had offered Goarcke crack. Goarcke could not resist the temptation, and he and Simms smoked crack together. At one point, Simms began masturbating and insisted that Goarcke also masturbate if he wanted more crack. Goarcke complied. Goarcke testified that when Simms received a donation, he would often immediately use the donation to buy more drugs. After approximately two months, Goarcke and Simms had a falling out, and they parted ways.

Jacob Nilles testified that he met Simms while purchasing drugs and assumed his dealer was obtaining drugs from Simms. Nilles also eventually moved in with Simms. Nilles and Simms began using drugs together. Nilles also accompanied Simms when he was asking for donations, though he stayed in the car. He testified Simms cashed the checks received as donations to FBF and used the money to buy drugs. Nilles also accompanied Simms to a doctor's office in Wisconsin, where Simms obtained hydrocodone and a fentanyl patch. Simms gave some of the hydrocodone and the patch to Nilles and sold the rest. At times, Simms would touch Nilles inappropriately and force himself on Nilles, but Nilles testified he was helpless because he depended on Simms for drugs.

In addition, John Wolgran testified that he drove Simms around to obtain donations and that afterward they would usually go right to a drug dealer, using the donations to obtain crack for immediate consumption. Multiple Dubuque residents testified concerning Simms's solicitation of donations from them. There was also evidence that Simms obtained prescription narcotic medications from multiple sources for his use, the use of those he was "helping," or for sale.

A trial information was filed, charging Simms with ongoing criminal conduct. The predicate offenses charged in the trial information were "theft, controlled substance violation, prostitution, and fraudulent practices." At the close of the State's evidence during trial, Simms moved for acquittal. Among other things, his motion generally raised a claim that the State had failed to prove any crime he committed resulted in financial gain. The motion did not specify which unlawful criminal act failed to result in financial gain but was instead a broad, sweeping, all-inclusive objection. The motion was overruled.

At the close of the evidence the following marshalling instruction was given.

> In order for the defendant to be found guilty of On-Going Criminal Conduct, the State must prove the Defendant committed a specified unlawful activity as defined herein as:
> (1) any act including any or all of the following preparatory or completed offenses, namely:
>     (a) fraudulent practices;
>     (b) theft;
>     (c) possession of controlled substances;
>     (d) prostitution; and
> (2) committed for financial gain on a continuing basis; and
> (3) that is punishable as indictable offense under the law of the State in which it occurred.
>     Each of the foregoing named offenses is an indictable offense under the laws of the Iowa Criminal Code.

Simms's counsel made no objection to the marshalling instruction and actually participated in its formation. Based on an objection by Simms's counsel, the trial court excluded other suggested predicate offenses from the instructions. At the close of the evidence, Simms renewed his motion, but he made no further record or specification as to the grounds for acquittal.

## II. Motion for Judgment of Acquittal

Simms first challenges the denial of his motion for judgment of acquittal. He contends there is insufficient evidence to show he participated in prostitution or possessed controlled substances for financial gain.

The State agrees there was no evidence Simms procured any financial gain from prostitution, but it contends error was not preserved. In the alternative, the State argues that inclusion of prostitution as a predicate offense was superfluous and harmless error.

The requirement for error preservation is based on fairness. *State v. Ambrose*, 861 N.W.2d 550, 555 (Iowa 2015). The objective is to allow the court an opportunity to correct the error and the appellate court a record on which the error could be reviewed. *Id.* It is necessary to point out specific evidentiary deficiencies in the motion. *See State v. Crone*, 545 N.W.2d 267, 270 (Iowa 1996).

In the motion for acquittal, Simms generally called attention to the lack of evidence connecting the indictable offenses with financial gain. The State contends that when error is based on the submission of an alternative theory not supported by sufficient evidence, a specific objection to the unsupported alternative theory is essential to preserve error. While we are not willing to accept such a sweeping requirement, we have concluded the all-encompassing motion was not specific enough to preserve error under the facts of this case. From a practical standpoint, if the court had sustained the all-inclusive motion, the charges would have been dismissed in their entirety. Admittedly, that places a heavy burden on trial counsel to have been more specific at the close of the State's evidence and may be nearly an impossibility when the charge is ongoing criminal conduct.

It appears the State may be able to withhold the predicate offenses it is relying on until the instructions are given. *See State v. Reed*, 618 N.W.2d 327, 330-31 (Iowa 2000). It would seem logical that defense counsel could require the prosecutor to designate the predicate offenses as a part of the motion to acquit, but it was not done here. The court was in no position to do anything other than overrule the general motion. When the marshalling instruction was

given, the sorting became much easier and absolutely critical, but counsel did not object to either drug possession or prostitution as a possible predicate offense. Because no objection was made, error was not preserved. In the alternative, Simms contends he received ineffective assistance of counsel.

### III. Ineffective Assistance of Counsel

#### A. Error Preservation

The ordinary rules of error preservation do not usually apply to claims of ineffective assistance of counsel. *State v. Fountain*, 786 N.W.2d 260, 263 (Iowa 2010).

#### B. Standard of Review

Ineffective-assistance-of-counsel claims raise constitutional issues and, therefore, are reviewed de novo. *Lemasters v. State*, 821 N.W.2d 856, 862 (Iowa 2012). When the record is adequate, a claim of ineffective assistance of counsel may be decided on direct appeal. *State v. Artzer*, 609 N.W.2d 526, 531 (Iowa 2000). In this case, the record is adequate.

#### C. Discussion

Simms alleges he received ineffective assistance of counsel based on counsel's failure to object to the instructions not supported by substantial evidence and to a violation of his right to remain silent. To prevail on a claim of ineffective assistance of counsel, a claimant must prove by a preponderance of the evidence that (1) counsel failed to perform an essential duty and (2) prejudice resulted. *Ledezma v. State*, 626 N.W.2d 134, 142 (Iowa 2001). A claim of ineffective assistance must overcome the presumption that counsel is competent. *Taylor v. State*, 352 N.W.2d 683, 685 (Iowa 1984). An accused is not entitled to

perfect representation but only that level of representation that is within the normal range of competency. *Artzer*, 609 N.W.2d at 531. "To establish prejudice the claimant must show the probability of a different result sufficient to undermine the confidence in the outcome." *State v. Thorndike,* 860 N.W.2d 316, 320 (Iowa 2015). Counsel is not ineffective for failing to make a meritless claim. *State v. Brubaker*, 805 N.W.2d 164, 171 (Iowa 2011).

### 1. Error in Instructions

The State admits there was no evidence connecting the crime of prostitution with any financial gain Simms may have enjoyed. If there was any payment, it was from Simms to others. However, the State contends the mere possession of cocaine allowed Simms to use and control Goarcke for the purpose of obtaining donations, and it therefore follows that Simms's possession of a controlled substance was committed for financial gain.

"The ongoing-criminal-conduct statute focuses on reducing the economic power of those who engage in ongoing illegal businesses for profit." *Reed,* 618 N.W.2d at 336. Although there was evidence Goarcke was an addict, possession is not a business and does not produce a profit. The possession of controlled substances was incidental to the business of obtaining donations for FBF. Simms's possession of controlled substances is remote from any affect it had on his scheme to obtain donations. To the extent Simms used drugs to control Goarcke, it was the delivery or promise of delivery that was used to influence Goarcke, not the crime of mere possession.

When the verdict is a general verdict, it is error to include an alternative method of committing a crime not supported by the evidence. *State v. Tyler*, 873

N.W.2d 741, 754 (Iowa 2016). The *Tyler* court rejected the distinction between a legal error and a factual error in *Griffin v. United States*, 502 U.S. 46, 56 (1991). *Id.*

On direct appeal, an incorrect instruction is presumed to be prejudicial. *State v. Mayes*, 204 N.W.2d 862, 865 (Iowa 1973). To succeed on an ineffective-assistance-of-counsel claim, it is necessary to establish prejudice. *Thorndike*, 860 N.W.2d at 321.

The prejudice prong of an ineffective-assistance-of-counsel claim that stems from an instruction on an alternative method of committing a crime that is unsupported by the evidence is not satisfied if the record is devoid of any evidence that suggests the unsupported alternative is applicable. *Id.* at 322; *State v. Maxwell*, 743 N.W.2d 185, 197 (Iowa 2008). In *Maxwell*, the jury was erroneously instructed on aiding and abetting when there was no evidence of aiding and abetting in the record. 743 N.W.2d at 197. In *Thorndike*, the prosecutor's closing argument stated the erroneously inserted theory of the crime probably did not apply. 860 N.W.2d at 322. In both cases, prejudice was not established. *See id.* at 323; *Maxwell*, 743 N.W.2d at 197.

The present situation is substantially different from the *Maxwell* and *Thorndike* cases. This record is laden with references to drugs, forced sex, and sex exchanged for drugs. The prosecutor frequently mentioned predatory sex, drugs, and drug addiction. When referring to the four alternative predicate crimes, the prosecutor stated, "There is evidence of all four and the State believes that you could find all four."

We must then determine whether confidence in the verdict has been undermined. A question the jury forwarded to the court during deliberation brings the answer into focus. The jury, by way of its foreperson, asked, "Do all jurors have to agree on a specific act or offense, or do we all simply have to believe he committed at least one of the four even if we don't agree which one?" The court responded, "Refer to instruction number 10," which was taken from Iowa Uniform Jury Instruction 100.16:

> Where two or more alternative theories are presented or where two or more facts would produce the same result, the law does not require each juror to agree to which theory or fact leads to his or her verdict. It is the verdict itself which must be unanimous not the theory or facts upon which it is based.

The jury returned the general verdict of guilty within forty minutes after receiving the court's direction.

On the facts before us, we conclude trial counsel was ineffective and a new trial is warranted.

### 2. Violation of Right to Remain Silent

Simms further contends that his Fifth Amendment right to remain silent was violated when his refusal to respond to an investigator's questions after receiving a *Miranda* warning was brought out on his cross-examination and commented on by the prosecutor during closing argument. *See State v. Metz,* 636 N.W.2d 94, 97 (Iowa 2001) ("[T]he Fifth Amendment guaranty against self-incrimination prohibits impeachment on the basis of a criminal defendant's silence after receipt of *Miranda* warnings."). This issue is not likely to occur on retrial; therefore, we find it unnecessary to rule on it.

**IV. Conclusion**

Because Simms's counsel was ineffective by failing to object to the inclusion of jury instructions that contained theories not supported by substantial evidence, this matter is reversed and remanded for a new trial.

**REVERSED AND REMANDED.**