# IN THE COURT OF APPEALS OF IOWA

No. 18-1729
Filed June 3, 2020

**STATE OF IOWA,**
    Plaintiff-Appellee,

**vs.**

**MICHAEL G. GERKEN,**
    Defendant-Appellant.
_____

Appeal from the Iowa District Court for Polk County, Arthur E. Gamble,
Judge.

Michael Gerken appeals his convictions of first-degree theft and ongoing
criminal conduct. **JUDGMENT OF CONVICTION AFFIRMED; SENTENCE
AFFIRMED IN PART, VACATED IN PART, AND REMANDED.**

Martha J. Lucey, State Appellate Defender, and Theresa R. Wilson,
Assistant Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, and Martha E. Trout, Assistant Attorney
General, for appellee.

Considered by Vaitheswaran, P.J., Mullins, J., and Potterfield, S.J.*
Gamble, S.J., takes no part.

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2020).

**VAITHESWARAN, Presiding Judge.**

A jury found Michael Gerken guilty of first-degree theft and ongoing criminal conduct. On appeal, Gerken contends (1) the evidence was insufficient to support the jury's findings of guilt, (2) the district court abused its discretion "in allowing the State to reopen the record to provide additional evidence on essential elements of ongoing criminal conduct," (3) his trial attorney was ineffective in "handling the jury instructions for both offenses," and (4) the district court erred in ordering "an unknown amount of attorney fees."

## I.    *Sufficiency of the Evidence*

The jury was instructed the State would have to prove the following elements of theft by deception:

> 1. On or about April through May, 2017, in Polk County and/or Dallas County, Iowa, the defendant committed one or more acts of obtaining money of another by deception.
> 2. The defendant deceived another by knowingly promising the delivery of goods or other performance, which the defendant did not intend to perform, or knew he would not be able to perform
> 3. The defendant acted with specific intent to deceive.

The jury was further instructed that "failure to perform, standing alone, is not evidence that the defendant did not intend to perform."

Gerken contends the State failed to prove he "had no intention of performing." To the contrary, the State called a parade of witnesses who could have convinced a rational juror that Gerken did not intend to follow through with certain promises he made.

For example, a Polk County realtor testified she was approached by a man identifying himself as "Bob Anderson." "Anderson," she said, was selling the opportunity to advertise her relatively new business to "participating sports

fami[lies]" in the Johnston school district. Specifically, "Anderson" was "going to send out fliers, send out mass e-mails with all our information on it." "Anderson" characterized the promotion as a fundraiser, with the school receiving eighty percent of the proceeds. He met with the realtor and told her he had made arrangements with the Johnston school district. "Anderson" signed an agreement with the realtor in April and she wrote a $790 check to "Moms and Dads for Kids" to cover advertising that "was supposed to start June 1st." The check was cashed, but the fliers never went out. The realtor emailed "Anderson" "a couple of times" but received "no response." She lost $790. While testifying, the realtor identified "Anderson" as the defendant, Michael Gerken.

Similarly, a chiropractor who had just returned from a seminar on "concussion management" met with "Anderson" about an opportunity to sponsor cards advertising her business to coaches in the Johnston school district. "Anderson" indicated he had an arrangement with the coaches, and he promised the chiropractor "face-time with all of the coaches." The chiropractor met with "Anderson" in her office, signed an agreement, and gave him a check for $790 to cover "[t]he advertisement commitment" and "a $40 set-up fee." She never received "a fixed ad," and she did not know whether her cards were distributed by the Johnston school district. She lost $790. Like the realtor, the chiropractor identified "Anderson" as the defendant, Michael Gerken.

The State also called the former activities director for the Johnston schools. He testified to being the "go-to person" for fundraising activities. He said the coaches "very much understood" that "if they were approached" by individuals who wished to fundraise, "they would need to refer those individuals to" him "as the

director." The director "[n]ever . . . heard of" Moms and Dads for Kids or Anderson and, when asked whether he recognized the defendant Michael Gerken, he testified, "I have never seen him before."

A detective with the Urbandale police department confirmed the person going by Anderson was actually Michael Gerken. He stated the realtor's check and the check of the chiropractor were deposited into a Minnesota account on which Gerken was the signatory. He described various personal expenditures Gerken made with funds in the account, including payments to casinos.

The State called several other individuals who testified to the same experiences with "Anderson," including his promises of advertising opportunities with other school districts in Polk and Dallas Counties. The State also called witnesses from Minnesota who received similar advertising pitches.

The State presented substantial evidence of Gerken's intent to repudiate the advertising agreements. *See State v. Sanford*, 814 N.W.2d 611, 615 (Iowa 2012) (setting forth standard of review); *see also State v. Rivers*, 588 N.W.2d 408, 411–12 (Iowa 1998) (finding evidence of a home remodeling contractor's intent to defraud customers from the defendant's "various ploys and reasons to persuade the customer to make additional and premature payments," his efforts to convince customers to do additional work, his failure to communicate with them, and "evidence that he had followed a similar pattern of conduct a year earlier"); *cf. State v. Tovar*, 580 N.W.2d 768, 771–72 (Iowa 1998) (finding insubstantial evidence of a failure of intent to perform contracts for the installation of carpeting where the district court in a bench trial "made no specific findings, except that [the defendant] misstated the purpose of making the checks payable to him").

Gerken also contends the State "failed to establish the aggregated value was more than $10,000," a predicate to a finding of first-degree theft. He concedes the Iowa checks totaled more than $10,000 but argues one of the claimed offenses occurred in Dallas County rather than Polk County and the acts did not all occur within a thirty-day time frame as specified in the instructions.

Iowa Code section 803.3(1) (2015) authorizes prosecution of offenses in any counties in which the offense occurs, with the county having the "dominant number of elements" being afforded the right to proceed first. That provision allowed for aggregation of the Dallas County charge with the Polk County charges. Additionally, the jury was instructed that it could consider money "stolen from different persons by two or more acts which occur in approximately the same time period" as a "single theft," permitting aggregation of the "value of all the money stolen." *See* Iowa Code § 714.3(2); *cf. State v. Schiebout*, No. 18-0081, 2019 WL 5790870, at *6 (Iowa Ct. App. Nov. 6, 2019) (finding no prejudice where the jury received the "single theft" instruction). The jury made an explicit finding that "the value of the money taken by" Gerken was "[m]ore than $10,000." Substantial evidence supports the finding.

Our discussion of the evidence supporting the theft charge essentially resolves Gerken's challenge to the sufficiency of the evidence supporting the ongoing-criminal-conduct charge, which required proof of the following elements:

> 1. Between 2015 and 2017, the defendant committed multiple acts of Theft by Deception;
> 2. Each of these acts was punishable as an indictable offense in Iowa or Minnesota;
> 3. The defendant committed these acts for financial gain;
> 4. The defendant committed these acts on an ongoing basis.

Contrary to Gerken's assertion, reasonable jurors could have rejected his testimony that he was in the process of "producing the fundraising cards" when he was "interrupted . . . by the police investigation." They also could have found he committed the acts "on an ongoing basis." *See State v. Dutcher*, No. 15-0858, 2016 WL 3002950, at *2 (Iowa Ct. App. May 25, 2016) (noting robberies "were committed with similar purpose, results, participants, victims, and methods of commission"); *State v. Friedley*, No. 01-1580, 2003 WL 1523343, at *5 (Iowa Ct. App. Mar. 26, 2003) ("Multiple acts of theft may constitute ongoing criminal conduct."). As for Gerken's contention that "the jury could only consider the acts constituting Theft by Deception under Iowa law" because the court failed to make reference to the specific "indictable offense" in Minnesota, a separate instruction addressed the Minnesota crime of "theft by swindle."

The jury's findings of guilt were supported by substantial evidence.

## II. Reopening the Record

After the State rested, the jury recessed, and Gerken moved for judgment of acquittal on the ongoing-criminal-conduct charge. He argued in part, "There was testimony from a couple of individuals in Minnesota, but there is not sufficient evidence from those individuals that those acts constituted a crime under the Minnesota statute." The State orally moved to reopen the record to prove Minnesota law. After a lengthy discussion, the district court granted the motion. The court reasoned that Gerken was "on notice" of the State's intent to rely on the Minnesota statute by virtue of the State's reference to the statute in the minutes of testimony and the State's simultaneous request "to take judicial notice of Minnesota Criminal Statute 609.52.2(a)(4), theft by swindle, valued more than

$500, less than $1000, gross misdemeanor, punishable as an indictable offense with a maximum term of incarceration of one year in jail and a fine of $3000." The court further found "[n]obody" would be "inconvenienced" by having the State mark a copy of the statute, and "the defense" would not be "prejudiced by it because the defense has known that this was part of the case all along, and it's in the State's requested jury instructions."

After the jury returned and before the defense began its presentation, the State marked and offered a copy of the Minnesota statute. Gerken objected "on the grounds previously stated." The district court overruled the objection and admitted the exhibit. The court took "judicial notice of the statute."

On appeal, Gerken contends the district court abused its discretion in reopening the record. *See State v. Long*, 814 N.W.2d 572, 577–78 (Iowa 2012) (setting forth standard of review). We disagree.

"Omission of evidence by accident or inadvertence is a proper reason to reopen the record." *Id.* at 580. The prosecutor indicated that he thought his early request to take judicial notice of the Minnesota statute was sufficient and, for that reason, he did not offer a hard copy of the provision before resting. The district court's acceptance of the explanation did not evince an abuse of discretion.

The court's finding that the defense was not prejudiced by the reopening similarly did not evince an abuse of discretion. *See id.* at 580–81 (considering the absence of surprise or unfair prejudice in reopening the record). As the court noted, Gerken was aware of the Minnesota statute from the outset.

Finally, the seamlessness of the record reopening supports the court's decision, as does the limited evidence presented on reopening. *See id.* at 583–84.

We affirm the district court's decision to reopen the record.

### III. *Ineffective Assistance of Counsel*[1]

Gerken claims his trial attorney was ineffective in "handling the jury instructions for both offenses." First, he asserts his attorney should have insisted on substitution of the phrase "continuing basis" for "ongoing basis" in the ongoing-criminal-conduct instruction. He acknowledges "[t]his is not necessarily fatal," as the dictionary definitions for the terms "both tend to refer to 'remaining in progress' or 'enduring.'" But he claims the instructions were not an accurate statement of the law because they "did not provide the jury with any guidance as to closed-ended or open-ended continuity," pursuant to *State v. Reed*, 618 N.W.2d 327, 334–35 (Iowa 2000).

Accepting Gerken's concession that "ongoing basis" was essentially synonymous with "continuing basis," we conclude our holding in *State v. Banes*, 910 N.W.2d 634, 640 (Iowa Ct. App. 2018), is controlling. There, we found a virtually identical jury instruction—albeit one using "continuing basis" rather than "ongoing basis"—was "a correct statement of Iowa law." *See id.*; *cf. Dutcher*, 2016 WL 3002950, at *3 (predating *Banes* and preserving a similar claim for postconviction relief). Based on *Banes*, we further conclude counsel did not

---

[1] *See State v. Macke*, 933 N.W.2d 226, 228 (Iowa 2019) (holding amendments in S.F. 589 dealing with ineffective-assistance-of-counsel claims do not apply retroactively to appeals pending on July 1, 2019, such as this appeal filed on October 8, 2018).

perform deficiently in failing to challenge the language of the jury instruction. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984).

Gerken also argues the ongoing-criminal-conduct instruction should have "delineated the underlying offenses being used for ongoing criminal conduct." But as the State points out, the marshalling instruction required the jury to "find that each of the underlying offenses occurred." Again, we conclude counsel did not perform deficiently in failing to raise this challenge to the jury instruction.

Finally, Gerken contends the theft instruction "should have separated out the various incidents of theft, had the jury determine both the individual and aggregate amounts, and required the jury to determine whether the conditions had been met to allow the thefts to be properly aggregated in the first place." But, as discussed in connection with Gerken's challenge to the sufficiency of the evidence supporting the theft charge, the jury was instructed on aggregation and made a finding on the issue. *Cf. State v. Amsden*, 300 N.W.2d 882, 886 (Iowa 1981) (holding the trial court should have submitted the aggregation question to the jury rather than deciding the issue itself). The jury also was instructed on the degrees of theft and the threshold for a finding of first-degree theft. Counsel had nothing to object to on this score.

On our de novo review, we conclude Gerken's attorney breached no essential duties in connection with the ineffective-assistance-of-counsel claims raised on direct appeal.

## IV. *Restitution*

Gerken challenges the portion of the district court's sentencing order that "found he had a reasonable ability to pay attorney fees given that the amount of

the fees was unknown at the time the court made its determination." The State concedes error. *See State v. Albright*, 925 N.W.2d 144, 162 (Iowa 2019); *see also State v. Gross*, 935 N.W.2d 695, 702 (Iowa 2019) ("*Albright* makes clear that with respect to restitution, no award of reasonable-ability-to-pay items . . . may occur until all such items are before the court and the court has then made a reasonable-ability-to-pay determination."). In accordance with *Albright*, we vacate the provision in the order of disposition requiring Gerken to make restitution and remand for further proceedings.

**JUDGMENT OF CONVICTION AFFIRMED; SENTENCE AFFIRMED IN PART, VACATED IN PART, AND REMANDED.**