# IN THE COURT OF APPEALS OF IOWA

No. 20-0280
Filed September 22, 2021

**STATE OF IOWA,**
      Plaintiff-Appellee,

**vs.**

**JORDAN MCKIM CRAWFORD,**
      Defendant-Appellant.
_____

Appeal from the Iowa District Court for Jefferson County, Lucy J. Gamon, Judge.

The defendant appeals from his convictions of aiding and abetting first-degree robbery and ongoing criminal conduct. **AFFIRMED.**

Martha J. Lucey, State Appellate Defender, and Maria Ruhtenberg, Assistant Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, and Zachary Miller, Assistant Attorney General, for appellee.

Considered by Tabor, P.J., and Greer, JJ, and Doyle, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2021).

**GREER, Judge.**

A couple of robberies at small town banks ultimately led to the arrest of Jordan Crawford. A jury convicted Crawford of aiding and abetting first-degree robbery and of ongoing criminal conduct. On appeal, Crawford challenges the sufficiency of the evidence supporting his convictions. In the alternative, if he failed to preserve error at trial, Crawford argues his trial counsel provided ineffective assistance. Recognizing Iowa Code section 814.7 (Supp. 2019) prevents us from deciding claims of ineffective assistance on direct appeal, Crawford challenges the constitutionality of the statute, arguing it violates his right to due process and the separation-of-powers doctrine. Finally, if we cannot decide his claim of ineffective assistance, Crawford asks us to adopt plain error review.

**I. Background Facts and Proceedings.**

Many details of the bank robberies and ongoing criminal conduct involving Crawford developed from trial testimony of Ethan Spray, who negotiated a plea deal in exchange for testimony in Crawford's trial. First, Spray described an ATM robbery orchestrated by Ross Thornton, Crawford, and Spray. On May 30, 2018, he, Thornton, and Crawford made a plan to use an acetylene torch to cut into and take cash from an ATM. Spray acted as lookout while Crawford operated the torch and Thornton assisted. Then, on June 1, 2018, Spray went to Packwood, Iowa, and robbed Pilot Grove Savings Bank at gunpoint while wearing a black ski mask. Thornton, who was living with Crawford at the time, waited in Spray's red sedan car throughout the commission of the crime. After the heist, Thornton drove the two men to where they had parked a second vehicle, a dark-colored truck. Spray removed his clothing, gave it to Thornton to burn, and drove off in his car.

Eventually, they again met at the home shared by Thornton and Crawford. During the twenty-two minutes surrounding the robbery, five phone calls were made between two numbers, one registered to both Thornton and Crawford and another registered only to Crawford.

Now back at the house with Crawford, Spray testified that he and Thornton counted out over $14,000 in stolen cash.[1] The money was wrapped in bands with the bank's name on them, which Thornton and Spray proceeded to burn. They also burned the two dollar bills that they believed would be more suspicious to use in the community. Crawford helped with some of the burning but was mostly "in and out" of the room.

Linking Crawford's involvement in the criminal spree, Spray testified that Crawford provided him with the mask he wore during the bank robbery. Spray offered that Crawford's role was to provide him with gloves as well, but that Crawford failed to come through with that assignment. Spray testified Crawford knew the items were needed for the bank robbery.

As far as how the cash would be spent, Spray testified that there was an understanding between himself, Thornton, and Crawford about how the money taken from the bank would be used. Following the robbery, they, along with Thornton's son, took a road trip to Oregon. Phone records produced by the State showed the location of Spray's cell phone moving out west and back in the days following the robbery. After the date of the robbery, Crawford began messaging individuals in Oregon looking for the "hook up for the green." Messages from

---

[1] The bank manager testified the cash stolen exceeded $18,000, but Spray only thought they counted $14,000 in stolen money.

Crawford's Facebook account show him reaching out to various contacts with iterations of "I just got back from Oregon and got that fire green for the low."[2] He advertised strains such as "purple haze," "golden pineapple," "[G]irl [S]cout cookies," "white widow," "blueberry headband," and "purple kush" for "2200 a p" (explained by law enforcement witnesses, without objection, to mean $2200 for a pound). These messages continued across the weeks following the robbery. Photographs of marijuana were also posted.

Several law enforcement agencies investigated the bank robbery. Along with the bank's camera, other video footage from area businesses picked up Spray's red vehicle arriving and leaving the park and a person matching the robber's description jogging from and to the car around the time of the robbery. The Jefferson County Sheriff's Department narrowed their electronic search to like-kind vehicles with owners matching the robber's physical description to Spray. The sheriff executed search warrants on the homes of Spray, Thornton, and Crawford and on Crawford's vehicle. In Crawford's car, deputies found around $470, two cell phones, and a "personal use" amount of marijuana. Bait money,[3] or money specially marked and documented for tracing purposes following a bank robbery, was found in Thornton's home. Thornton also had an insurance card for the truck used in the robbery, but they learned the truck was registered to Crawford. No bait

---

[2] Jasper County Deputy Jerry Marcellus testified the phrase "green for the low" meant marijuana sold for a low price in slang used by drug dealers.

[3] The Pilot Grove Bank branch manager testified about the term "bait money": "we photocopy what we would term bait money, so in case there is a robbery, you do have a set of bills there that are identifiable for serial numbers, and we have photocopies of them front and back." The banker believed the robber left with over $18,000 in cash.

money was found in Crawford's car, but at trial, Crawford argued the $470 found in his vehicle was paid to him by his employer.

After presenting this evidence, Crawford was tried by a jury and convicted of aiding and abetting first-degree robbery and ongoing criminal conduct. He appeals.

## II. Standard of Review.

We review sufficiency-of-the-evidence claims for correction of legal error. *State v. Olofson*, 958 N.W.2d 225, 227 (Iowa Ct. App. 2021). We uphold the verdict if it is supported by substantial evidence, which means evidence that can convince a rational juror the defendant was guilty beyond a reasonable doubt. *Id.* Evidence is viewed in the light most favorable to the State. *Id.*

## III. Discussion.

### A. Sufficiency of the Evidence and Error Preservation.

We address whether Crawford properly preserved error on each of his sufficiency-of-evidence claims in each separate section below. The State claims that error was not fully preserved as to the first-degree robbery charge but does not challenge the ongoing criminal conduct claims. "To preserve error on a claim of insufficient evidence for appellate review in a criminal case, the defendant must make a motion for judgment of acquittal at trial that identifies the specific grounds raised on appeal." *State v. Truesdell*, 679 N.W.2d 611, 615 (Iowa 2004). Generally, issues cannot be heard on appeal unless the trial court was first given the chance to consider them and correct the error. *State v. Mulvany*, 603 N.W.2d 630, 632 (Iowa Ct. App. 1999). An appellant is therefore limited to the errors preserved in trial counsel's motions.

1. *Aiding and Abetting First-Degree Robbery*.

Crawford argued in his motion for acquittal there was not substantial evidence for the jury to find he aided and abetted Spray and Thornton in the commission of armed robbery. Under the State's theory that Crawford aided and abetted the robbery, the State had to prove the following and the court so instructed:

> 1. On or about the 1st day of June, 2018, [Crawford] had the specific intent to commit a theft, either as principal or as aider and abettor.
> 2. To carry out his intention or to assist another to commit the theft or to escape from the scene, with or without the stolen property, [Crawford] aided and abetted another in the robbery of the Pilot Grove Savings Bank, during which time Darrell Hoehne was threatened with, or purposefully placed in immediate fear of serious injury.
> 3. [Crawford] aided and abetted another who was armed with a dangerous weapon.

As the jury was instructed, to aid and abet means to "knowingly approve and agree to the commission of a crime, either by active participation in it or by knowingly advising or encouraging the act in some way before or when it is committed." Here, the State lists evidence of Crawford's efforts towards the robbery as: his role to help procure a mask and gloves; use of his truck for the heist; his telephone contact before, during, and after the robbery; his engagement in burning the money bands; and the joint road trip to use the funds to buy drugs illegal in Iowa.

Still, Crawford's written motion about the aiding and abetting charge is brief—it simply states that no credible proof was presented that he aided and abetted Thornton and Spray in the commission of the robbery. In his oral argument, Crawford pointed out that he did not provide Spray with any gloves and that Spray's memory was addled by methamphetamine use. That said, no specific

element was challenged, and specifically, no reference was made to Crawford's knowledge of the use of a gun. But, on appeal, Crawford asserts there is a lack of evidence showing his knowledge of the robbery overall and a lack of support to show he knew or intended that the provided face covering would be used in commission of a robbery.[4] Now, he argues that no proof established he knew a gun would be used in commission of a crime. This appeal is the first time these specific elements were detailed. *See State v. Greene,* 592 N.W.2d 24, 29 (Iowa 1999) (holding to preserve error, a motion for judgment on acquittal must point out specific deficiencies in the evidence). Additionally, it is not as if the grounds Crawford was challenging were "obvious and understood," so Crawford's non-specific motion for judgment of acquittal on this charge does not bypass the specificity requirements. *State v. Williams*, 695 N.W.2d 23, 27–28 (Iowa 2005). As a result, error was not properly preserved on Crawford's insufficiency of the evidence over the first count, robbery in the first degree.

2. *Ongoing Criminal Conduct.*

Here, under the jury instruction related to ongoing criminal conduct as submitted to the jury, the State had to prove two elements:

> 1. During the time period from May 29, 2018, through June 15, 2018, the defendant participated, directly or indirectly, in an enterprise.
> 2. The defendant knew the enterprise was being conducted through specified unlawful activity on a continuing basis, to wit: a) the theft of money from the Brighton, Iowa ATM; and/or b) the robbery of the Pilot Grove Savings in Packwood, Iowa Bank; and/or c) the distribution, either attempted or completed, of marijuana.

---

[4] Crawford's motion does reference that "mere knowledge of the contemplation of a crime by another" is insufficient. Yet he raises the premise only in connection with the ongoing criminal charges charge, not aiding and abetting first-degree robbery.

Crawford zeros in on these failures of proof: (1) no credible evidence that Crawford was involved in ongoing criminal activity, and (2) no proof the specified indictable offenses occurred on a continuing basis. At best, as to the first element, the State proved Crawford's involvement in an enterprise to rob the Brighton ATM and the Pilot Grove Savings Bank.[5] *See* Iowa Code § 706A.1(2) (defining "enterprise" as "any sole proprietorship, partnership, corporation, trust, or other legal entity, or any unchartered union, association, or group of persons associated in fact although not a legal entity, and includes unlawful as well as lawful enterprises").

To address the second element of ongoing criminal conduct, if the acts were committed *on a continuing basis*, it is significant that these robberies happened just two days apart: May 30, 2018 and June 1, 2018. Beyond the evidence of the two robberies, the State produced Facebook messages showing attempts at marijuana sales by Crawford over a period starting on June 8 until June 22. The State argues the Facebook messages show ongoing criminal conduct amounting to attempted drug sales and distribution. Indeed, many Facebook messages mention Crawford trying to buy "green" in Oregon and then sell it in Iowa, which could convince a reasonable juror that he was attempting to sell marijuana, even if no actual sale was proven. The Facebook postings supported buying and attempting to sell "pounds" of marijuana—even photographs of the goods. Thus,

---

[5] The criminal complaint charged Crawford under 706A.2(1)(c)—"participating in an enterprise established for the purpose of conducting illegal drug trafficking activity for profit. Said enterprise was funded through a series of criminal acts to include the robbery of the Pilot Grove Savings Bank on June 1, 2018." Later the State amended the complaint to assert the criminal activity occurred from May 1, 2018 to August 31, 2018.

the testimony from Spray that they had travelled to Oregon to purchase marijuana, corroborated by the phone records documenting the trip and the messages from Crawford to potential buyers that he had just returned from Oregon with many pounds of marijuana, could lead a reasonable juror to believe that a drug trafficking operation was afoot.

Even so, Crawford argues the State had hurdles involving proof it did not cover. But we note Crawford faces a roadblock relating back to the marshalling instruction given to the jury. That marshalling instruction listed the "specified unlawful activity" as "(a) the theft of money from the Brighton, Iowa ATM; and/or (b) the robbery of the Pilot Grove Savings in Packwood, Iowa Bank; and/or (c) the distribution, either attempted or completed, of marijuana." No one objected to this instruction. *See State v Banes*, 910 N.W.2d 634, 639–40 (Iowa Ct. App. 2018) (holding failure to object to the instruction makes it the law of the case for purposes of the review of the record on sufficiency of the evidence). Although another jury instruction clarified that "specified unlawful activity" was "any act, including any preparatory or completed offense, committed for financial gain on a *continuing basis* that is punishable as an indictable offense under the laws of the state in which it occurred and under the laws of this state," no one defined what "continuing basis" meant. (Emphasis added.) Thus, under the guidance of the instructions, proof that Crawford knew the enterprise was occurring through any one of these three acts was enough to convict. In simple terms, the instruction defined the specified unlawful activity as any one of the robberies or the attempted or completed distribution of marijuana. Under the jury instructions given and from a

review of the evidence in the light most favorable to the State, the jury followed the law of the case and did its job.

Most troubling, the jury found no guidance in the instructions about what "continuing basis" meant in the legal sense. While we agree with the State that it proved the first element, under the sufficiency of the evidence standard, we find scant evidence of continuing criminal activity. "Continuing basis" was interpreted in *State v. Reed*, 618 N.W.2d 327, 334–35 (Iowa 2000). This can be either closed or open, meaning that either there need be "a closed period of repeated conduct, or . . . past conduct that by its nature projects into the future with a threat of repetition." *Reed*, 618 N.W.2d at 335. If the predicate acts occur over a short period of time, there must be a relationship between the acts and the threat of continuing criminal activity. *Banes,* 910 N.W.2d at 640–41 (recognizing that a few weeks or months would not satisfy the requirement). There must be specific evidence of this ongoing intent. *State v. Goodwin*, No. 18-1822, 2020 WL 1551149, at *7 (Iowa Ct. App. Apr. 1, 2020). Here, evidence of two robberies committed within a few days is insufficient to show a continued threat of future criminal conduct to support the charge of ongoing criminal conduct. *See State v. Harrington,* No. 08-2030, 2010 WL 2925696, at *3 (Iowa Ct. App. July 28, 2011) (finding three acts of burglary, all within a short time, did not constitute substantial evidence to support a finding that "the defendant committed the acts on a continuing basis"). The State failed to produce evidence of an actual sale or distribution of marijuana, of monies in Crawford's possession from the robberies or from any drug sales, and only found a personal use amount of marijuana in Crawford's vehicle. *See State v. Agee*, No. 02-0967, 2003 WL 22087479, at *2

(Iowa Ct. App. Sept. 10, 2003) (finding defendant's possession of stolen mail, checks and deposit slips and blank checks belonging to another person, a police scanner and a list of eleven financial institutions supported a threat of future criminal activity). While the Facebook messages suggest Crawford's attempts to recruit purchasers of marijuana, the timing of those requests occurred within a few days to weeks after the robberies. Again, there was no evidence of other future criminal acts established under the substantial-evidence standard. In sum, the threat of continued criminal activity cannot be extracted from this record.

But we must return to error preservation on this element of ongoing-criminal-conduct count. To be fair, Crawford's general arguments at trial centered on the State's failure to prove Crawford's involvement in any crime. As to Crawford's current complaint that the State failed to show a threat of continuing criminal activity, we question if Crawford preserved this question for our review. Both Crawford's written and oral motions failed to mention that the period of time involving the robberies and the solicitation for drug sales was too short to satisfy the statutory requirement that the acts were "committed for financial gain *on a continuing basis.*" Iowa Code § 706A.2(1)(c). Thus, on our own review, we must find Crawford failed to preserve error on this specific deficiency in the proof. *Agee*, 2003 WL 22087479, at *2. Likewise, Crawford now asserts that attempting to distribute marijuana is not a "specified unlawful activity" punishable as an indictable offense.[6] But again, without objection, the marshalling instruction allowed the jury

---

[6] We also note that section 706A.2(1)(c) and (d), under which Crawford was charged, state together that "[i]t is unlawful for any person to conspire or *attempt to violate* or to solicit or facilitate the violations" that are considered ongoing criminal conduct. Iowa Code § 706A.2(1) (2018) (emphasis added). Therefore,

to apply the law of the case that included an attempted distribution of marijuana. Thus, we affirm the conviction for ongoing criminal conduct and Crawford can address these issues at a later date.

### B. Ineffective Assistance of Counsel.

Recognizing he may have failed to preserve error on his sufficiency-of-the-evidence claims, Crawford raised the issues under the framework of ineffective assistance of counsel. Most compelling, the State concedes that if error had been preserved on the challenge to the first-degree-robbery charge, "that the State failed to produce evidence that [Crawford] knew or specifically intended that Spray would use a gun during the robbery." Thus, it appears appropriate to address that issue in a postconviction proceeding. *See State v. Lilly*, 908 N.W.2d 293, 309 (Iowa 2019) (analyzing if counsel provided ineffective assistance because of the failure to move for acquittal specifically on a first-degree robbery where Lilly argued there was insufficient evidence he knew the robber was going to use a dangerous weapon during the heist).

But, on direct appeal, we can no longer decide claims of ineffective assistance. *See* Iowa Code § 814.7 (Supp. 2019); *State v. Macke*, 933 N.W.2d 226, 228 (Iowa 2019). Crawford acknowledges this bar but argues the statute is unconstitutional both under a theory of due process and the separation-of-powers doctrine. Each issue has been decided by the Iowa Supreme Court. Crawford argues section 814.7[7] violates his right to due process. But "[t]here is no due

---

while attempted distribution alone might not be a crime with which he could be charged, the attempt is criminalized under 706A.2(d) for purposes of ongoing criminal conduct. *See id.*

[7] The statute, which took effect July 1, 2019, provides:

process right to present claims of ineffective assistance of counsel on direct appeal." *State v. Treptow*, 960 N.W.2d 98, 108 (Iowa 2021). "Due process merely requires an opportunity to present those claims in some forum." *Id.* The appropriate forum is through an application for postconviction relief under chapter 822, not here. Iowa Code § 814.7.

Additionally, Crawford asserts that section 814.7 violates his right to due process because it prevents effective counsel on appeal. On appeal, a defendant is entitled to effective assistance of appellate counsel, requiring both a right to counsel and that the counsel performs competently in the appeal. *Treptow*, 960 N.W.2d at 107. Yet, under Iowa law, "[t]he right to the effective assistance of appellate counsel where direct appeal is available does not create an entitlement to direct appeal as a matter of right and a further entitlement to present any and all claims on direct appeal as a matter of right." *Id.* Crawford's due process challenge fails.

Crawford next argues that 814.7 violates the separation-of-powers doctrine and limits the appellate courts' jurisdiction. *See State v. Tucker*, 959 N.W.2d 140, 148 (Iowa 2021) ("'The division of the powers of government into three different departments—legislative, executive, and judicial—lies at the very foundation of our constitutional system.' The 'historic concept of separation of powers to safeguard

---

An ineffective assistance of counsel claim in a criminal case shall be determined by filing an application for postconviction relief pursuant to chapter 822. The claim need not be raised on direct appeal from the criminal proceedings in order to preserve the claim for postconviction relief purposes, and *the claim shall not be decided on direct appeal from the criminal proceedings.*

Iowa Code § 814.7 (emphasis added).

against tyranny' is memorialized in the Iowa Constitution.'" (citations omitted)); *see also* Iowa Const. art. III, § 1. Our supreme court, however, has already determined "section 814.7 does not violate the separation-of-powers doctrine." *Tucker,* 959 N.W.2d at 151. Further, "[t]he new law does not deprive this court of jurisdiction." *Id.* This argument also fails. In the end, Crawford's option is to pursue his claims under the ineffective assistance of counsel route.

### C. Plain Error Review.

Finally, if we cannot decide his claim of ineffective assistance, Crawford asks us to utilize the plain error rule in this case. The Iowa Supreme Court, however, has consistently declined to adopt plain error review. *See, e.g.*, *Treptow*, 960 N.W.2d at 109; *State v. Rutledge*, 600 N.W.2d 234, 325 (Iowa 1999); *State v. McCright*, 569 N.W.2d 605, 607 (Iowa 1997); *State v. Miles*, 344 N.W.2d 231, 233 (Iowa 1984). We are not at liberty to do so now.

## IV. Conclusion.

With only the issue of failure to show a specified illicit act preserved for error, a jury could have properly convicted Mr. Crawford with the evidence presented on that claim. We affirm Crawford's conviction for both robbery in the first degree and ongoing criminal conduct.

**AFFIRMED.**